[No. C003167. Third Dist. June 19, 1991.]

FPI DEVELOPMENT, INC., et al., Plaintiffs and Respondents, v.
AL NAKASHIMA et al., Defendants and Appellants.

374

COUNSEL

Matthew Righetti for Defendants and Appellants.

Mackenroth, Seley & Anwyl, Jim Anwyl, Claudia J. Robinson, Quattrin, Clemons & England and Timothy C. Clemons for Plaintiffs and Respondents.

## OPINION

## BLEASE, Acting P. J.—

### OPINION ON REHEARING

Al Nakashima and George Price (defendants) appeal from a summary judgment granted plaintiffs FPI Development, Inc. (FPI) and K. W. Hunt in an action on a promissory note.[1]

The case tenders two issues of importance to summary judgment proceedings. The first issue concerns the application of the parol evidence rule in such a proceeding. The second issue concerns the use of a defensive showing to amplify a defectively pled answer in framing the issues for summary judgment.

The note was created as part of a complicated set of real estate development transactions. Kenneth Earp obtained an option (the Earp option) to purchase a golf course. Plaintiffs obtained an option (the FPI option) to purchase the Earp option from Earp. They assigned their rights in the FPI option to defendants in return for execution of a promissory note. The note was not paid according to its terms. Defendants claim the note is not enforceable. The dispute gave rise to this action.

In their complaint plaintiffs alleged that defendants made and delivered a promissory note and that it was not paid. Defendants answered with a general denial and a laundry list of affirmative defenses stating essentially the name of a defense and that it bars recovery. Plaintiffs did not challenge this practice at the pleading stage, and there is little or no suggestion in the record that they used discovery methods to amplify or penetrate the nature of the purported defenses. (See *Andalon* v. *Superior Court* (1984) 162 Cal.App.3d 600, 605 [208 Cal.Rptr. 899].)

Instead they invoked summary judgment proceedings and adduced proof of the note and that defendants did not pay, ignoring the affirmative defenses suggested in the answer. Defendants responded with a melange of evidence and arguments addressed to legal theories not correlated with the answer.

---

[1] The note, while apparently qualifying as commercial paper under division 3 of the California Uniform Commercial Code, was payable to identified persons and for that reason no one could obtain the status of holder in due course. (See Cal. U. Com. Code, §§ 3104, 3112, and 3805.) A holder of such a note is subject to all of the defenses applicable to an action on a simple contract. (Cal. U. Com. Code, § 3306, subd. (b).) This case does *not* seek enforcement of a note by a holder in due course, a circumstance to which, under the California Uniform Commercial Code, a statutory rule in the nature of a parol evidence rule has broad categorical application. (Cal. U. Com. Code, § 3305; See 9 Wigmore, Evidence (Chadbourn rev. ed. 1981) § 2444, p. 150.)

Plaintiffs replied in part with an additional responsive showing and in part by challenging the defendants' evidence as barred by the parol evidence rule. The trial court ruled in plaintiffs' favor.

The result is an amorphous controversy for which we need a structure for analysis. We will first examine the procedural shortcomings and determine that no issues of material fact were raised by the conclusory allegations of affirmative defense of the answer. Since plaintiffs did not demur thereto they waived objection to the form of the pleading. But to determine the materiality of defendants' showing we read the evidence they adduced as supplementing the defectively pled answer where plausibly connected to a defense asserted in the answer. Having done so we will resolve the questions whether the parol evidence rule should be applied to bar a defense and whether a triable defense has been made out by defendants' showing.

We will conclude that the view of the parol evidence rule applied by the trial court—that it categorically bars a collateral oral agreement which conditions the payment of a promissory note unconditional on its face—fails to comply with the rule set forth in Code of Civil Procedure section 1856 and the case law it incorporates, including the leading case of *Masterson* v. *Sine* (1968) 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561]. ■ Nonetheless, a correct decision must be upheld regardless of the reasoning (see e.g., *People* v. *Braeseke* (1979) 25 Cal.3d 691, 700 [159 Cal.Rptr. 684, 602 P.2d 384]) and we will test defendants' claims with the correct parol evidence rule.

Defendants advance three defenses. We will conclude that while the parol evidence rule does not generically bar defendants' first claim of an unmet, unstated condition to payment, this particular claim is barred by the rule advanced in *Masterson* v. *Sine*. We will conclude that defendants' remaining claims—of frustration of purpose and sham transaction—are not subject to the parol evidence rule but that their showing as to these claims does not make out a viable defense to enforcement of the note in the light of the pleadings.

We will affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

The complaint alleges a cause of action on a promissory note, breach of a written contract to pay money in accord with its terms. It alleges that defendants "made and delivered" a promissory note to pay plaintiffs $478,718 on or before February 20, 1986, and that defendants failed to make

payment as of the date the complaint was filed, March 21, 1986. The note is incorporated by reference.[2]

Defendants answered the complaint by way of a general denial and assertions of some 16 affirmative defenses. All of them are stated as legal conclusions, e.g., "Plaintiffs and their agents and employees, practiced fraud and deception upon the Defendants." Some of the asserted defenses are not legally recognizable. Among the assertions are that plaintiffs "fraudulently induced" defendants to enter into the note and that there has been a failure of consideration between the parties relieving defendants of their obligation to perform. The former assertion was related in the summary judgment proceedings to the claim that defendants were told the note would not be due until they sold the property. The latter assertion was related to the claim that the note was made as part of an agreement to purchase the FPI option and that the option was worthless.

Plaintiffs did not demur to the answer and moved directly for summary judgment. They tendered the following pertinent evidentiary showing. Defendants admitted in response to requests for admissions that they executed the note and that no payment was made as required by its terms. Taken alone, and disregarding the assertions of affirmative defense, this showing is sufficient to entitle plaintiffs to a summary judgment.

Plaintiffs asserted the following background to the note transaction. In June 1984 Marian Fry gave Kenneth Earp an option to purchase the parcel of real property known as the Hayward Golf Course. In December 1984 FPI and Earp entered an agreement "wherein FPI assumed EARP's option position." Thereafter defendants had some discussions with Earp and as a result sought to obtain the FPI option. Defendants "negotiated the option rights with FPI in return for personally executing [the promissory note]." The president of FPI executed an assignment of the FPI option to defendants.

Plaintiffs offered the defendants' declarations in support of these assertions. Nakashima declared (in a proceeding pertaining to a cross-action between defendants and Earp) that: "On or about November 20, 1985, GEORGE PRICE and I entered into a written agreement wherein FPI assigned

---

[2]The note is entitled "PROMISSORY NOTE" and provides: "FOR VALUE RECEIVED, the undersigned jointly and severally promise to pay to FPI DEVELOPMENT, INC., and K. W. HUNT, at Sacramento, California, on or before February 20, 1986, the principal sum of FOUR HUNDRED FIFTY EIGHT THOUSAND SEVEN HUNDRED EIGHTEEN ($458,718) DOLLARS in lawful money of the United States of America, without interest to said date. [¶] Should suit be brought for collection hereof, makers shall pay reasonable attorney fees and court costs therein."

all right, option and interest in and to the FPI option, related to the Hayward Golf Course real property, to GEORGE PRICE and myself. [¶] 2. A major dispute in this litigation concerns an oral and written modification of the aforementioned FPI option granted by [Earp], to the optionees-by-assignment (GEORGE PRICE and myself). [¶] 3. I believe the aforementioned modification included a reduction in the purchase price and an indemnity as to obligations concerning FPI."

Nakashima and Price made identical declarations in pertinent part as follows. Defendants met with Kenneth Earp and Ralph Thompson. Earp acknowledged his signature on a written agreement that was produced. The writing stated that if defendants could obtain the FPI option from FPI for less than $1,350,000, Earp would reduce the price to purchase the Earp option and assume all responsibility defendants incurred to pay FPI. Defendants met with FPI representatives and negotiated an assignment of the FPI option in return for personally executing the promissory note.

Plaintiffs also attached replies to interrogatories in which defendants denied that there were no unexpressed conditions precedent to its performance but listed as "all" of such conditions "That plaintiffs not intentionally and/or negligently misrepresent the circumstances surrounding the status and progress of the property, including certain promises of political support."

Plaintiffs argued that the note is unambiguous and that defendants admit its execution and nonpayment. There are therefore no triable issues of fact and they are entitled to summary judgment.

Defendants tendered a cacophonous medley of declarations and discovery materials as purported defenses to the enforcement of the terms of the note. They made several arguments concerning triable issues of material fact. The first is that FPI breached its contract with Earp in failing to "aggressively pursue the development of the option property."

Defendants attached a portion of the written agreement between FPI and Earp. It grants FPI an exclusive right to purchase the Earp option by making installment payments totalling $400,000. (Only one installment payment, in the amount of $100,000 was to occur after the date of execution of the note.) The FPI/Earp agreement also contains a clause requiring FPI to "have prepared and aggressively process a residential development for the Property." Defendants adduced a deposition excerpt in which Earp testified that he had written to FPI expressing his opinion that it was not pursuing the development procedure properly and that at the time he felt FPI had breached the contract. They adduced a letter, dated several months after the

date of execution of the note, from an attorney representing the owner of the property, asserting that FPI had breached this provision of the contract and an earlier letter from Earp to FPI in which he referred to that attorney as his attorney. Finally, they adduced a deposition excerpt of Ralph Thompson, a former employee of FPI, in which Thompson opined that he felt that FPI had not lived up to its agreement to aggressively pursue government approvals for development.

Defendants also argued FPI breached its contract with Earp in failing to obtain Earp's written consent to the assignment of the FPI option to defendants. Defendants adduced evidence that the contract between FPI and Earp has a clause prohibiting its assignment without the prior written consent of Earp. They adduced evidence that no such written consent was obtained.

Defendants argued that a third triable issue was whether the parties intended the note to have any legal effect. They adduced a deposition excerpt of Price as follows. "[Hunt] said, well, that we'll have to draw a note for you to sign for this, but it's just for corporate records. That we're going to be working together on future projects and if you want, you can apply this money for our side on the Bethel Island project or some other project. [¶] That they would give us an extension if we had a buyer as to whatever time it took to make a sale." Price testified that when he signed the note he did not intend to be bound by its terms. "When I signed this note here, I was told by Mr. Hunt that this was merely a formality for record purposes only. There was a corporation. They had to have something in the folder to cover this thing."

Defendants also adduced evidence that they were assured the note would not be enforced until the property was sold.[3] Price testified at his deposition that the agreement was that defendants were not obligated to pay any amount until the property was sold and that there was no deadline concerning a date of sale. However, he also testified that FPI was to give defendants an "extension" if they had a buyer, "as to whatever time it took to make a sale," that FPI was to give "any and all consideration as far as extensions," and that it was his understanding with Earp that if defendants could not find a buyer

---

[3]At the hearing on the motion for summary judgment, on August 12, 1987, defendants proffered two transcribed, sworn statements of employees of FPI, Barry Bates and Bill Niemi, who were involved in the note transaction. Defendants' counsel asserted that the statements showed that the note was procured by means of representations that it would not be enforced except upon the sale of the property. The trial court ruled the statements inadmissible as untimely and also declined to accept them on the ground "it would be more evidence in the same category as the evidence which you submit in the opposition motion which in view is subjected to parol evidence objections." Defendants later unsuccessfully sought reconsideration to get this evidence into the record.

within 60 days Earp "would pay FPI the $458,000 due on the promissory note," and that this arrangement was disclosed to FPI.

Defendants also adduced deposition excerpts of each of them testifying that Earp had promised to indemnify them for liability to FPI.

Plaintiffs responded with a memorandum and excerpts from the depositions of defendants and Earp. Plaintiffs argued that defendants had raised two claims of triable issue of material fact but that neither was meritorious. Plaintiffs identified the claims as: (1) a failure of consideration due to material breach of the agreement between FPI and Earp, and (2) collateral agreement not to enforce the terms of the promissory note. Plaintiffs argued that there was no triable issue of failure of consideration because Earp testified in deposition that he did not believe that FPI had completely breached the agreement prior to transfer of the option to defendants. This assertion was supported by a deposition excerpt in which Earp also testified that if defendants had exercised the option he would not have objected. Plaintiffs argued that there was no triable issue about a collateral agreement because defendants' proffered evidence of such an agreement was barred by the parol evidence rule.

The trial court granted FPI's motion for summary judgment by minute order with the following explanation. "The evidence submitted by defendants does not create any triable issue of material fact. Any claimed false promise is not independent of the terms of the note. See *Glendale Federal Savings and Loan* case [*Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101 (135 Cal.Rptr. 802)]. At best the evidence establishes a dispute as to existence of a contemporaneous oral agreement that the note is not payable according to its express terms—which is not a defense to an action on the note. See *Coast Bank* case [*Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581 (97 Cal.Rptr. 30)]."

This appeal resulted from the ensuing judgment.

### DISCUSSION

### I

At issue is whether plaintiffs' showing is sufficient to entitle them to a summary judgment. Because there is no dispute concerning the facts alleged in the complaint, the answer turns on the admissibility and materiality of defendants' opposition showing.

The trial court excluded the defendants' evidence on the ground it was offered to contradict the express terms of the note, in violation of the parol

evidence rule. Defendants claim the evidence relates to three defenses outside the rule and that in addition there is a triable issue of fact whether the note is an integrated agreement. Plaintiffs claim the evidence shows no triable issue of material fact relating to integration or relating to two of the claimed defenses and that the remaining defenses are barred by the parol evidence rule. Neither side has it right.

We first examine the procedural complications arising from the defective answer. We will treat the defendants' showing in the summary judgment proceeding as allegations of fact which amplify the conclusory allegations of affirmative defense in the answer where there is a plausible connection between them. Having done so we will determine, in the order most convenient for exposition, whether defendants have made out a legally cognizable defense and, if so, whether that defense is precluded by the parol evidence rule.

## II

### *The Pleadings and Summary Judgment*

The parties treat the appeal solely as a matter whether there are triable issues of material fact in the evidence adduced in the summary judgment proceedings. They are oblivious to the role of the pleadings as the outer measure of materiality in a summary judgment proceeding. They have employed the pleadings as a ticket to the courtroom which may be discarded after admission.

■ "The purpose of a summary judgment proceeding is to permit a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute." (*Andalon* v. *Superior Court, supra,* 162 Cal.App.3d at pp. 604-605.) ■ "The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues: the function of the affidavits or declarations is to disclose whether there is any triable issue of fact within the issues delimited by the pleadings." (*Orange County Air Pollution Control Dist.* v. *Superior Court* (1972) 27 Cal.App.3d 109, 113 [103 Cal.Rptr. 410]; see also, e.g., *Pultz* v. *Holgerson* (1986) 184 Cal.App.3d 1110, 1114 [229 Cal.Rptr. 531].) The complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action. (*C. L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 745 [135 Cal.Rptr. 483].) The answer supplements that measure where the plaintiff is the moving party and the defendant relies upon an affirmative defense. It is incumbent upon a moving party plaintiff not only to show there is no material factual dispute with respect to its cause of action but also to show that there is no material factual dispute with

respect to the defenses proffered by the defendant. (See *Sadlier* v. *Superior Court* (1986) 184 Cal.App.3d 1050, 1055-1056 [229 Cal.Rptr. 374].)

The role of the pleadings in measuring materiality is supplemented by rules directly applicable to a summary judgment proceeding. The parties must submit "separate statements" identifying each of the material facts in dispute with reference to the supporting evidence. (Code Civ. Proc., § 437c, subd. (b).) The motion or opposition thereto must be supported by facts in the form of "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (*Ibid.*) In a properly pleaded case this showing addresses the matters of fact put in issue by the pleadings, for properly drafted pleadings aver the ultimate facts which constitute the cause of action or defense thereto. (See *Andalon, supra,* 162 Cal.App.3d at pp. 604-605.) In a summary judgment proceeding the factual submissions of the parties must track these averments by providing evidence of the ultimate facts averred. Because of this relationship, in the absence of an appropriate objection, some defects in the pleading of an ultimate fact may be remedied by resort to a factual showing in the summary judgment proceeding. In this manner the pleadings may be read together with the factual showings in the summary judgment proceeding for purposes of discerning what is in issue.

■ The procedure for resolving a summary judgment motion *presupposes* that the pleadings are adequate to put in issue a cause of action or defense thereto. (See *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 262 [223 P.2d 244].) However a pleading may be defective in failing to allege an element of a cause of action or in failing to intelligibly identify a defense thereto. In such a case, the moving party need not address a missing element or, obviously, respond to assertions which are unintelligible or make out no recognizable legal claim. The summary judgment proceeding is thereby necessarily transmuted into a test of the pleadings and the summary judgment motion into a motion for judgment on the pleadings. In these circumstances it has been said that a defendant's "motion for summary judgment necessarily includes a test of the sufficiency of the complaint and as such is in legal effect a motion for judgment on the pleadings." (*Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219], citations omitted.) Similarly, a plaintiff's motion for summary judgment necessarily includes a test of the sufficiency of the answer. (See *Sadlier, supra,* 184 Cal.App.3d at p. 1055.)

■ Thus, a defect in the answer may entitle the moving party plaintiff to a summary judgment if the only matter in dispute is a defense that has not been intelligibly asserted in the answer. If the answer has made out some

intelligible but defectively pled claim, in the absence of an appropriate challenge we will examine the defendants' showing, treating it as supplementing the pleading where it is plausibly connected to the claim, to determine whether a legally cognizable defense has been made out. By granting this review we do not condone defective pleading of the kind that is before us. Had plaintiffs challenged the defectively pled answer, our task would be far simpler.

## A.

### *The General Denial Put in Issue Only the Facts Alleged in the Complaint*

We apply these principles here. The initial question is: what was in issue? We first look to the complaint and the general denial of the answer. Plaintiffs pled a cause of action on a promissory note, an action on a written contract. In such an action the plaintiff must plead the existence of a contract, its terms which establish the obligation in issue, the occurrence of any conditions precedent to enforcement of the obligation, and the breach of that obligation. (See 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 467-482, pp. 507-519; 8 Grossman & Van Alstyne, Cal. Practice (2d ed. 1981) Pleading—Civil Actions, §§ 1011-1026, pp. 210-245.) In a simple action on a note the allegation of execution of the note alleges the existence of a contract, the incorporation of a copy of the note alleges its terms and the allegation of nonpayment in accordance with those terms alleges a breach. (See 4 Witkin, Cal. Procedure, *supra*, §§ 522-524, pp. 554-556.)

Defendants' general denial put in issue the material allegations of the complaint. (Code Civ. Proc., § 431.30, subd. (d).) It is important to observe what matters are not put in issue by a denial. This plumbs the line between defenses by denial and defenses by allegation of new matter. (Cf. Code Civ. Proc., § 431.30, subds. (b)(1) and (b)(2).) A defense in the nature of "yes, the allegations are true, but . . ." is not put in issue by the denial. What is put in issue by a denial is limited to the allegations of the complaint.[4] This encompasses the defenses that the purported contract is wholly void, that the

---

[4]This is cogently explained by Professor Pomeroy as follows. "Any facts which tend to disprove some one of these allegations may be given in evidence under the denial; any fact which does not thus directly tend to disprove some one or more of these allegations cannot be given in evidence under the denial. It follows, that if such fact is in itself a defense, or, in combination with others, aids in establishing a defense, this defense must be based upon the assumption, that, so far as it is concerned, all the material allegations made by the plaintiff are either admitted or proven to be true. The facts which constitute or aid in constituting such a defense are "new matter." In this respect the new matter of the codes is analogous to the pleas by way of confession and avoidance of the common law, since it does in truth, confess and avoid. The two definitions may now be given and their contrast will be plain. A plea by way of confession and avoidance *admitted that the cause of action alleged did once exist,* and

copy of the note is false, and that defendants paid in accordance with its terms. (See 5 Witkin, Cal. Procedure, *supra*, Pleading, §§ 981, 996, pp. 409, 421.) It also encompasses the defense that the note was not executed. (See *Lever* v. *Garoogian* (1974) 41 Cal.App.3d 37 [115 Cal.Rptr. 856] [party told the note was a receipt]; Pomeroy, Code Remedies, *supra*, § 552, fn. 39, p. 904.) As will be seen, the defendants make no such claims. Hence, their contention of triable issues of material fact must lie under an affirmative defense.

## B.

### *The Allegations of Affirmative Defense Put No Facts in Issue*

That brings us to the allegations of new matter. Numerous defenses were purportedly raised by defendants' allegations of affirmative defense. Most of these allegations fail to state a defense even when liberally construed in defendants' favor. (See *Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 560 [122 P.2d 264].) Some are simply immaterial. For example, defendants allege as a conclusion that plaintiff's claim is barred by laches, an equitable defense that has no application to the plaintiff's legal claim. (E.g., *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 461-462 [326 P.2d 484].) All of the allegations are proffered in the form of terse legal conclusions, rather than as facts "averred as carefully and with as much detail as the facts which constitute the cause of action and are alleged in the complaint." (See Pomeroy, Code Remedies, *supra*, § 563, at p. 917.) The only affirmative defenses that are mentioned in the summary judgment proceedings, fraud in the inducement and failure of consideration, are not well pled, consisting of legal conclusions, and would not have survived a demurrer. (See e.g., *Metropolis etc. Sav. Bank* v. *Monnier* (1915) 169 Cal. 592, 596 [147 P. 265] (*Metropolis*); *Riegel* v. *Wollenshlager* (1920) 49 Cal.App. 300, 301-302 [193 P. 160].)

 Despite the failure to demur to the answer, plaintiffs could have objected to the introduction of evidence addressed to these defenses as

averred subsequent facts which operated to discharge or satisfy it. The new matter of the codes *admits that all the material allegations of the complaint or petition are true, and consists of facts not alleged therein which destroy the right of action, and defeat a recovery.* To sum up these conclusions, the classification of and distinction between defenses at the common law depended upon the intrinsic, essential nature of the causes of action and of the defenses. The analogous classification and distinction between defenses admissible under a denial, and those which are new matter, in the new procedure, depend primarily upon the structure of the complaint or petition, and the material averments of fact which it contains. All facts which directly tend to disprove any one or more of these averments may be offered under the general denial: all facts which do not thus directly tend to disprove some one or more of these averments, but tend to establish a defense independently of them, cannot be offered under the denial; they are new matter, and must be specially pleaded." (Pomeroy, Code Remedies (5th ed. 1929) § 549, pp. 900-901, italics in original, fn. omitted.)

immaterial. (Code Civ. Proc., § 437c, subd. (c); see e.g., *Metropolis, supra*, 169 Cal. at pp. 596-597.) They did not. In this circumstance it would be unfair to ground a ruling on the inadequacy of the pleadings *if* the pleadings, read in the light of the facts adduced in the summary judgment proceeding, give notice to the plaintiffs of a potentially meritorious defense. If plaintiffs had openly challenged the adequacy of defendants' pleading in the trial court, and defendants tendered a potentially meritorious unpled defense, it is likely that they would have been allowed to amend their answer. (See 5 Witkin, Cal. Procedure, *supra*, Pleading, §§ 1121-1164, pp. 537-587.) For that reason we deem plaintiffs' failure to challenge the sufficiency of the pleading of affirmative defenses as a partial waiver of the right to rely upon these defects on appeal.

We do so for reasons analogous to the appellate doctrine of theory of trial. ██ "Where the parties try the case on the assumption that a cause of action is stated, that certain issues are raised by the pleadings, that a particular issue is controlling, or that other steps affecting the course of the trial are correct, neither party can change this theory for purposes of review on appeal." (9 Witkin, Cal. Procedure, *supra*, Appeal, §§ 316-323, pp. 327-334.)

However, we cannot wholly disregard the absence of a proper pleading. The doctrine of theory of trial permits a variance in proof, the scope of which is ordinarily dependent upon what is pled. (See e.g., 9 Witkin, Cal. Procedure, *supra*, Appeal, § 322, pp. 332-333; *Metropolis, supra*, 169 Cal. at p. 597; see generally, Code Civ. Proc., § 471.) That requires that the pleading minimally advise the opposing party of the nature of the defense even if defective as conclusory. ██ Accordingly, we will treat the summary judgment proceedings as follows. If there is a triable issue of fact as to matters put in issue by the general denial, defendants are entitled to reversal of the summary judgment. If the allegations of affirmative defense, read in the light of the facts adduced in the summary judgment proceeding, gave notice to the plaintiffs of a potentially meritorious defense, defendants are likewise entitled to reversal of the summary judgment. Failing both tests, we will affirm the judgment.

With this framework established we turn to the contentions of the defendants.

### III

#### *The Defense of Unstated Condition and the Parol Evidence Rule*

██ Defendants contend they established as a triable issue of material fact whether their obligation to pay the note was subject to the unstated

condition that they sell the Hayward Golf Course real property. According to them, the note was given in exchange for an option on the property and the condition of sale was the subject of a collateral oral agreement. Plaintiffs respond that the trial court properly invoked the parol evidence rule to exclude evidence of the claimed agreement. While the reasoning of the trial court on this point is incomplete its conclusion is correct and defendants' contention is not meritorious.

The parol evidence rule provides that "[w]hen the parties to a written contract have agreed to it as an 'integration'—a complete and final embodiment of the terms of an agreement—parol evidence cannot be used to add to or vary its terms." (*Masterson* v. *Sine, supra,* 68 Cal.2d at p. 225) Defendants argue that the sale of the Hayward Golf Course property was a condition precedent to enforcement of the note, a circumstance to which the rule has no application. FPI counters that the sale condition, if any, is a condition subsequent to which the parol evidence rule does apply. Defendants also claim that the question of integration as such presents a triable issue of fact. That question concerns the role of the court in addressing a parol evidence question in a summary judgment proceeding, a matter we will address. First we examine the parol evidence rule as it has been codified.

A.

*The Parol Evidence Rule as Codified*

The parol evidence rule has undergone a transformation in this century in a fitful progression of case law capped by *Masterson* v. *Sine* and its codification by amendment to Code of Civil Procedure section 1856 in 1978.[5] The amendment was proposed by the California Law Revision Commission and enacted without change. For that reason the commission comment is entitled to substantial weight in construing the statute. (See, e.g., *Van Arsdale*

---

[5]Section 1856, in pertinent part, provides: "(a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. [¶] (b) The terms set forth in a writing described in subdivision (a) may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement.

" . . . . . . . . . . . . . . . . . . . . . . .

[¶] (d) The court shall determine whether the writing is intended by the parties as a final expression of their agreement with respect to such terms as are included therein and whether the writing is intended also as a complete and exclusive statement of the terms of the agreement.

" . . . . . . . . . . . . . . . . . . . . . . .

[¶] (g) This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in Section 1860, or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud."

v. *Hollinger* (1968) 68 Cal.2d 245, 249-250 [66 Cal.Rptr. 20, 437 P.2d 508].) It says that the amendment codifies the *Masterson* rule. "Subdivision (b) is comparable to subdivision (b) of Commercial Code Section 2202 and codifies prior law. See, e.g., Masterson v. Sine, 68 Cal.2d 222 . . . ." (Cal. Law Revision Com. com. 1978 amend., 20 West's Ann. Code Civ. Proc. (1983 ed.) § 1856, p. 30.)[6]

Prior to the transformation worked by *Masterson* and the allied cases of *Pacific Gas & Elec. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373], and *Delta Dynamics, Inc. v. Arioto* (1968) 69 Cal.2d 525 [72 Cal.Rptr. 785, 446 P.2d 785], the parol evidence rule stringently limited consideration of parol evidence to augment or explain a "term of a contract." This phrase, in the sense given it by the Restatement Second of Contracts, section 5, refers to "legal relations resulting from the promise or set of promises which relates to a particular matter, whether or not the parties manifest an intention to create those relations." The terms of the contract may arise by written agreement or by implication of law on matters where the writing is silent. (See *ibid.*, com. (a) and (b).)

Prior to *Masterson* a party to a written contract was effectively precluded from employing evidence of a collateral oral agreement which conditioned the terms of the writing including those implied by law. (See 68 Cal.2d at pp. 229-230, fn. 3; also see, e.g., McWilliams, *The Parol Evidence Rule in California* (1919) 7 Cal.L.Rev. 417, 421.) As applied to promissory notes it was the case that "[o]rdinarily, in the absence of fraud, mistake, or a lack or failure of consideration, a prior or contemporaneous oral agreement that a promissory note is not to be payable according to its terms constitutes no defense to an action on the note." (*Oakland Medical Bldg. Corp. v. Aureguy* (1953) 41 Cal.2d 521, 523 [261 P.2d 249].) That restriction has been changed, as we shall see, by the codification of *Masterson*, at least with regard to the variety of note here.[7]

---

[6]The source of subdivisions (a) and (b) of Code of Civil Procedure section 1856 (fn. 5, *ante*) is the California Uniform Commercial Code parol evidence provision. The word "term" as used there means "portion of an agreement which relates to a particular matter" (See Cal. U. Com. Code, § 1201, subd. (42).) The Law Revision Commission comment to Code of Civil Procedure section 1856 notes that the language of Code of Civil Procedure section 1856, subdivisions (a) and (b) is, in effect, borrowed from the California Uniform Commercial Code parol evidence rule. The commission's report asserts that this borrowing results in beneficial clarifications of the existing law, including importation of the certainty standard of credibility of collateral agreements related in the text. (See 14 Cal. Law Revision Com. Rep. (1978) pp. 149-150.)

[7]The amended statute necessarily broadens the defenses available to a note where the rights of a holder in due course are not implicated. That is because California Uniform Commercial

 The parol evidence rule is grounded on the notion that a writing constitutes a jural *act*, conduct which alters the voluntary legal relations of the parties. (See 9 Wigmore, Evidence, *supra*, §§ 2400-2401, pp. 3-10.) This occurs if there is an integration, an embodiment of the jural act or a component of a jural act in a single written memorial of the parties' agreement. (See *Ibid.*) "The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement." (*Masterson v. Sine, supra,* 68 Cal.2d at p. 225.)

The starch in the unreconstructed parol evidence rule was the doctrine that integration should be determined solely from the face of the instrument. (See *Masterson v. Sine, supra,* 68 Cal.2d at pp. 226-227 and fn. 3, pp. 229-230.) *Masterson* rejected this doctrine, declaring that the "face of the instrument" doctrine is "an outmoded approach to the parol evidence rule . . . ." (*Ibid.*; also see, e.g., Note, *Chief Justice Traynor and the Parol Evidence Rule* (1970) 22 Stan.L.Rev. 547.) It says the policies of the parol evidence rule can be served by a less drastic rule. The concern that written evidence is more accurate than human memory "can be adequately served by excluding parol evidence of agreements that directly contradict the writing." (*Masterson v. Sine, supra,* 68 Cal.2d at p. 227.) "[T]he fear that fraud or unintentional invention . . . will mislead the finder of facts" (*ibid.*) can be constrained by *normative* tests of credibility. *Masterson* advances two such tests, the first taken from the Restatement Second of Contracts, section 240, and the second from the Uniform Commercial Code, section 2-202. An oral agreement is creditable if it might naturally have been made as a separate agreement by parties similarly situated.[8] It is also creditable unless it can be said with certainty that the parties would have included the oral agreement in the writing. This latter test is given as one measure of credibility in the Law Revision Commission Comment to Code of Civil Procedure section 1856, subdivision (b).[9]

At issue in *Masterson* was whether an option in a deed to repurchase real property was assignable. The deed provided that the option was reserved to

Code section 3306, subdivision (b) applies to such a note "[a]ll defenses of any party which would be available in an action on a simple contract . . . ." We employ *Masterson*'s tests in determining what defenses to such a note are not barred by the parol evidence rule.

[8] With respect to this test *Masterson* gives approval to Corbin's view "that, even in situations where the court concludes that it would not have been natural for the parties to make the alleged collateral oral agreement, parol evidence of such an agreement should nevertheless be permitted if the court is convinced that the unnatural actually happened in the case being adjudicated." (68 Cal.2d at p. 228, fn. 1.)

[9] "One indication of the completeness and exclusivity of the writing is whether the additional term is such that, if agreed upon, it would certainly have been included in the writing." (Cal. Law Rev. Com. com. 1978 amend., 20 West's Ann. Code Civ. Proc. *supra*, § 1856, p. 30.)

the "[g]rantors," the Mastersons. It did not say "reserved to the grantors alone" or use language which ruled out an assignment. On that score it was silent. There was no facial conflict between the deed and the condition. Rather, the conflict arose because in contract law a deed is deemed assignable if it is silent on the subject. (68 Cal.2d. at pp. 228-229.) The grantees sought to overcome this rule. As relatives of the grantors they proffered extrinsic evidence that "the parties wanted the property kept in the Masterson family and that the option was therefore personal to the grantors . . . ." (*Id.* at pp. 224, 231.) The trial court ruled that the collateral agreement was not admissible because it conflicted with the term supplied by law. (*Ibid.*) The Supreme Court reversed that determination.

*Masterson* reasons that in view of the familial context of the transaction, the constraint of the format of a deed, and the lack of indication that the parties were experienced enough to be on notice of the importance of including all elements of the agreement in the deed, the proffered collateral agreement was one that might naturally have been made without embodiment in the writing. (68 Cal.2d at p. 228.) In these circumstances the extrinsic evidence is admissible to contravene the construction which the law ordinarily would supply.

The first prong of *Masterson*, whether a proffered oral agreement "directly contradict[s] the writing", was explained in the allied case of *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co., supra,* 69 Cal.2d 33 (hereafter *Thomas Drayage*). It permitted the introduction of extrinsic evidence to reveal a latent ambiguity in the writing. "[T]he meaning of a writing '. . . can only be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words. The exclusion of parol evidence regarding such circumstances merely because the words do not appear ambiguous to the reader can easily lead to the attribution to a written instrument of a meaning that was never intended.' [Citations.] [¶] Although extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract, these terms must first be determined before it can be decided whether or not extrinsic evidence is being offered for a prohibited purpose." (69 Cal.2d at pp. 38-39.) This view of language is based upon the observation that "[w]ords, written or oral, cannot apply themselves to the subject matter. . . . Even though words seem on their face to have only a single possible meaning, other meanings often appear when the circumstances [of their application] are disclosed." (Rest.2d Contracts, § 214, com. b., p. 133.)[10] Subdivision (g) of Code of Civil Procedure section 1856

---

[10]This view of meaning does not embody the unconstrained view of language that some ascribe to it. (Compare *Trident Center* v. *Connecticut General Life Ins.* (9th Cir. 1988) 847

codifies this rule by permitting evidence of "extrinsic ambiguity." (See Cal. Law Revision Com. com. 1978 amend., 20 West's Ann. Code Civ. Proc., *supra*, § 1856, at p. 30; see also *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 435 [204 Cal.Rptr. 435, 682 P.2d 1100].)

In *Thomas Drayage* extrinsic evidence was offered to show that a contract clause which indemnified " 'against all loss . . . resulting from . . . injury to property, arising out of or in any way connected with the performance of this contract' " applied only to the property of third parties. Although noting the language is " 'the classic language for a third party indemnity provision,' " the trial court excluded the extrinsic evidence because facially the clause contained no such condition. (69 Cal.2d at p. 36.) The Supreme Court rejected this approach to meaning. "If, . . . the language of a contract, in the light of all the circumstances, 'is fairly susceptible of either one of the two interpretations contended for' [citations], extrinsic evidence relevant to prove either of such meanings is admissible." (*Id.* at p. 40.) The court concluded that the clause was "reasonably susceptible" to the proffered meaning by reason of its historic trade usage, a statutory measure of meaning. (See Code Civ. Proc., §§ 1860, 1856, subd. (c).)

We will test the defendants' claims of defense by the measures advanced in these cases. Preliminarily we must determine how the rule is to be applied in summary judgment proceedings.

## B.

### *The Resolution of an Issue of Parol Evidence in a Summary Judgment Proceeding*

Defendants contend that the summary judgment is in error because the question of integration itself presented a triable issue of fact. Unraveling that claim requires an examination of the role of the trial court in resolving a parol evidence rule question in a summary judgment proceeding.

---

F.2d 564, 568-569.) The court is not required to accept implausible or semantically impermissible claims of meaning. " 'Without a doubt, in supporting the interests of their clients, counsel often urge upon the court interpretations of the language of a contract that are far removed from common and ordinary usage, without producing any substantial evidence that the other party to the transaction gave the unusual meaning to the language or had any reason to suppose that the first party did so. In such cases the harassed judge is justified in saying that the words are too plain and clear to justify such an interpretation. [3 Corbin on Contracts, § 542, p. 112.]' [¶] In cases like these, the words of the contract stand as written and will be enforced as interpreted, unless it is proved that they were included by mistake or accident or were assented to by reason of fraud or duress. But the harassed judge is not justified in saying that when the written words are (or seem) unambiguous relevant extrinsic evidence of the background, surrounding circumstances, and negotiations is inadmissible." (Corbin, *The Interpretation of Words and the Parol Evidence Rule* (1965) 50 Cornell L.Q. 161, 172.)

 Code of Civil Procedure section 1856, subdivision (d) provides that "[t]he court shall determine whether the writing is intended by the parties as a final expression of their agreement with respect to such terms as are included therein and whether the writing is intended also as a complete and exclusive statement of the terms of the agreement." Defendants suggest that this determination is inherently one of fact, and when disputed necessarily presents a triable issue of fact precluding summary judgment. The suggestion is unfounded.

It is natural to misread Code of Civil Procedure section 1856 to imply that the intention of the parties is always one of fact. The miscue lies in the view that intent is a subjective mental state of a contracting party. The (collective) intention of the parties is manifested in their language and conduct. A disembodied self-serving assertion that a party to the contract did not intend an integration is of no value and presents no issue of fact as to integration. It is only when there are conflicting inferences about the *actions* of the parties, i.e., what happened, that a question of fact is presented.

 The integration question presented by defendants—whether payment of the note was conditioned upon a sale of the real property—embodies the claim of a collateral oral agreement to an additional *consistent* term. Guidance to the procedural resolution of this claim is to be found in the Law Revision Commission Comment to Code of Civil Procedure section 1856. It asserts that section 1856 codifies *Brawthen* v. *H & R Block, Inc.* (1972) 28 Cal.App.3d 131 [104 Cal.Rptr. 486]. (Cal. Law Revision Com. com. 1978 amend., 20 West's Ann. Code Civ. Proc., *supra*, § 1856, p. 30.) *Brawthen*, pointing to *Masterson*, suggests that the question is a mixed question of fact and law. "[T]he proffered collateral parol agreement itself must be considered, as well as the circumstances surrounding the transaction, and its subject matter, nature and object. [Citations.] [¶] *Masterson* v. *Sine* . . . points out that evidence of the 'oral collateral agreements should be excluded only when the fact finder is likely to be misled.' This permits a limited weighing of the evidence by the trial court for the purpose of keeping 'incredible' evidence from the jury." (*Brawthen*, v. *H & R Block, supra*, 28 Cal.App.3d at p. 137.)

 However, while "weighing" the evidence may sometimes occur, it need not occur in every case. The resolution of a mixed question of fact and law requires three steps: (1) determining what happened, (2) selecting the applicable rules of law, (3) applying the rules to the facts. (*People* v. *Louis* (1986) 42 Cal.3d 969, 984-988 [232 Cal.Rptr. 110, 728 P.2d 180].)[11] It is

---

[11]Since the matter concerns the effect of a written contract, only the first step is assigned to the trial court for purposes of appellate review. (See *Parsons* v. *Bristol Development Co.*

only in the first step, where the evidence of what happened presents a conflict, that there is any occasion for the weighing of evidence in any sense seemingly unorthodox and unsuitable for a summary judgment proceeding.[12]

■ This case does not turn on a conflict in the evidence regarding what happened. The trial court resolved the question of parol evidence by categorically barring evidence of terms extrinsic to the note on the incorrect view that *any* such claim contradicts the terms of the note. Nonetheless, as we will show, defendants' claim does not present a triable issue of fact under the *Masterson* rule.

## C.

### *The Parties' Arguments Follow Case Law Superceded by Masterson and Its Codification*

Plaintiffs argue that the trial court correctly excluded evidence that the note was not payable until defendants sold the property. They rely on *Bank of America etc. Assn.* v. *Pendergrass* (1935) 4 Cal.2d 258, 263-264 [48 P.2d 659] and its post-*Masterson* progeny, *Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581, 590-591 [97 Cal.Rptr. 30] and *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 160-161 [135 Cal.Rptr. 802]. Defendants argue that these cases are inapplicable to a claim of a condition precedent and that is the kind of claim which they proffered, i.e., that their obligation to pay would only arise upon sale of the property. Plaintiffs counter that the claim was one of condition subsequent,

---

(1965) 62 Cal.2d 861, 866, fn. 2 [44 Cal.Rptr. 767, 402 P.2d 839]; Rest.2d Contracts, § 212, com. d.)

[12]Even at trial, where inference drawing is normal, there is some equivocation as to the precise role of the court in applying the parol evidence rule. "The determination whether a writing constitutes an integrated agreement has in some cases been deemed 'a question of law for the court,' [citation] and in other cases seen as 'entitled to the same deference on appeal as any other ruling of the court on an issue of fact.' [Citation.]" (*Bert G. Gianelli Distributing Co.* v. *Beck & Co.* (1985) 172 Cal.App.3d 1020, 1037 [219 Cal.Rptr. 203].) As explained in the text, the perceived discrepancy is attributable to the differing ways that parol evidence rule questions may arise.

Code of Civil Procedure section 437c provides for the resolution of such questions in summary judgment proceedings by the court. (Code Civ. Proc., § 437c, subds. (b) and (c).) If the parol evidence rule claim were explicitly broached as a question of what happened there would seem to be no impediment to treating a conflict in the evidence by conducting an ancillary hearing under Evidence Code section 403. In this circumstance the lack of integration turns on a preliminary fact whether the events which constitute the proffered collateral oral agreement "actually happened." A section 403 hearing would permit the court to adduce evidence of the preliminary fact in whatever form was appropriate, including live testimony subject to cross-examination if the demeanor of the witnesses were crucial.

that the obligation to pay would be discharged if the property were not sold.[13]

The parties take their cue from *Coast Bank* v. *Holmes, supra*, 19 Cal.App.3d 581. In that case the bank took a note from Holmes payable in 180 days. The money went to discharge the obligations of a third party, Reid. Holmes took a third trust deed in lands owned by Reid that were in escrow pending a sale. The trial court permitted Holmes to prove, inter alia, that the bank had orally agreed that it would not demand payment until and unless the land were sold. The *Coast Bank* opinion declared this evidence should have been barred by the parol evidence rule.

Holmes drew the *Coast Bank* court's attention to the following statement in *Masterson* concerning the artificiality of the "face of the document rule" for determining integration. "For example, a promissory note given by a debtor to his creditor may integrate all their present contractual rights and obligations, or it may be only a minor part of an underlying executory contract that would never be discovered by examining the face of the note." (68 Cal.2d at p. 227.) The *Coast Bank* opinion replies: "We do not view the passing comment as a disapproval of the long-settled rule that in the absence of fraud, mistake, lack or failure of consideration, or nonoccurrence of a condition precedent, a prior or contemporaneous oral agreement that a promissory note is not to be payable according to its terms is not a defense to an action on the note." (*Coast Bank* v. *Holmes, supra*, 19 Cal.App.3d at pp. 589-590, pre-*Masterson* citations omitted.) Thereafter, the opinion concludes that the Holmes's claim was of a condition subsequent. "In the instant case the conditions sought to be proved were subsequent rather than precedent; the evidence was not that the note would be ineffective until certain events happened, but that it would be discharged or cancelled if certain events occurred." (*Id.* at p. 590.) As such it was barred by the parol evidence rule because it was "inconsistent with the terms of a written agreement." (*Ibid.*)

---

[13]We decline the invitation to characterize the condition as subsequent or precedent. "Conditions, often classified as precedent, concurrent, and subsequent, have been puzzling to courts and writers. Analysis and definition have been conspicuous for their uncertainty and confusion. This is particularly obvious in cases that consider the 'parol evidence rule.' " (3 Corbin, Contracts (1960) § 589, p. 530.) The distinction rests on the concept that a condition precedent prevents the contract from coming into existence, hence it cannot be barred by the parol evidence rule which rests upon the contract. On the other hand, a condition subsequent is barred on the notion that an obligation stated without a condition "is plainly exclusive of a condition." (9 Wigmore, Evidence, *supra*, § 2435, p. 119.) Dean Wigmore admits the distinction is difficult and that "some subtlety of construction may be required." (*Ibid.*) The case law indicates that something more than subtlety is required. As Corbin demonstrates, the cases do not rest on the supposed conceptual foundation. Many of them conclude that matters that discharge a duty under the existing contract are conditions precedent. (See *ibid.*; also see Rest.2d Contracts, § 217, especially the reporter's. note to com. b.)

Notably absent from this discussion is an analysis along the lines suggested by *Masterson*. *Coast Bank* does not take note of the important dictum in *Masterson* preceding the reference to promissory notes, which says, quoting from Wigmore: " 'The conception of a writing as wholly and intrinsically self-determinative of the parties' intent to make it a sole memorial of one or seven or twenty-seven subjects of negotiation is an impossible one.' [Citation.]" (68 Cal.2d at pp. 226-227.) Nor does *Coast Bank* take note of the objection raised in dissent in *Masterson* to the remark that the parol evidence rule did not preclude evidence admitted " '"to prove the existence of a separate oral agreement as to any matter on which the document is silent and which is not inconsistent with its terms"—even though the instrument appeared to state a complete agreement,' " as inconsistent with *Pendergrass, supra*. (See *Masterson v. Sine, supra,* 68 Cal.2d at p. 236 (dis. opn. of Burke, J.).) Whatever the merits of the holding in *Coast Bank*, we cannot accept its sweeping conclusion that nothing that would count as a condition subsequent under the cases prior to *Masterson* could ever qualify as a consistent oral agreement.[14]

There is an implicit divergence between *Coast Bank* and the cases of *Birsner v. Bolles* (1971) 20 Cal.App.3d. 635 [97 Cal.Rptr. 846] and *Bank of Beverly Hills v. Catain* (1982) 128 Cal.App.3d 28 [180 Cal.Rptr. 67]. In *Bank of Beverly Hills* the court approved the admission of evidence that a note payable on a fixed date had been discharged by the substitution of another note providing for fixed installments. It ruled that such a claim does not contradict the face of the note. (*Id.* at p. 36.) In *Birsner*, the court sanctioned the admission of evidence that a note, which provided only that it was payable on demand, was subject to a "collateral agreement making the time of payment . . . conditional on [the] receipt of [an] inheritance . . . ." (20 Cal.App.3d at pp. 638-639.) With these cases in mind we examine the particular claim of consistent collateral agreement in the manner prescribed by *Masterson*.

### D.

### *The Parol Evidence Rule Applied to Defendants' Claim of Unmet Condition*

The first question posed under *Masterson* is whether the claimed agreement—that defendants' obligation to pay the note according to its terms was conditioned on sale of the property—*directly* "contradicts the writing." We first inquire into the correctness of the trial court's view that *any* such

---

[14]Again we note that the circumstances of a note that may be subject to the holder in due course doctrine is distinguishable. (See fn. 1, *ante.*)

condition contradicts the terms of the note. Finding no such conflict we inquire whether the condition advanced by defendants, as revealed their admissions, conflicts with the terms of the note. We will conclude that it does. We treat these issues seriatim.

*Coast Bank* is founded on the view that a condition subsequent may not be shown because "an obligation absolute is plainly exclusive of a condition." (See 9 Wigmore, Evidence, *supra*, § 2435, p. 119.) This does not advance the inquiry because, like the rule of assignability at issue in *Masterson*, whether an obligation is conditioned depends upon adherence to a rule supplied by law which implies there are no conditions where none are stated.

As a matter of the ordinary usage of language there is no necessary contradiction between the statement of an obligation unconditional in form and the statement of a condition to its enforcement, e.g., I am obliged to do an act, *unless* a specified contingency occurs. The contingencies which give rise to conditions, and hence to "unless clauses," are sometimes unstated. As *Masterson* observed with respect to notes: "For example, a promissory note given by a debtor to his creditor may integrate all their present contractual rights and obligations, or it may be only a minor part of an underlying executory contract that would never be discovered by examining the face of the note." (68 Cal.2d at p. 227.) In the language of Code of Civil Procedure section 1856, subdivision (b), a condition may be viewed as a "consistent additional term[ ]" so long as the statement of the obligation is left some field of potential operation. In that case there is no contradiction.

 A contradiction is a juxtaposition of two statements that cannot be reconciled as a semantically permissible *use* of language, i.e., a proffered oral agreement that does not satisfactorily account for the language used in the writing. (See *Pierce* v. *Edwards* (1907) 150 Cal. 650, 654-655 [89 P. 600].) If a proffered oral agreement that performance of a stated obligation is subject to a condition subsequent seems inconsistent it is not because the usage is generically contradictory. It is because in the context of the particular transaction that the proffered oral agreement to a condition subsequent is not one that is creditable. Thus the question of semantic conflict merges subtly with the question of credibility.

Ordinarily the irreconcilability of terms unconditional on their face and an unstated condition is based on the failure to satisfy the *Masterson* tests of credibility. (See Rest.2d Contracts, § 217.) Defendants claim there was an agreement that they would not be obliged to pay under the note unless the property were sold. If that were the case, defendants were given an option worth $300,000 to FPI with no recourse, since if they failed to sell the

property they were not obliged to pay. So described, this would be an unusual, to wit, an unnatural transaction. Nonetheless, such a transaction could have "actually happened." It would amount to a brokerage contract, placing an extraordinary risk on FPI since if no buyer was procured FPI would lose the money it paid to Earp for the option it assigned to defendants.

Whether the "unnatural actually happened" in this case, to use the *Masterson* phrase, tenders no factual issues. It may be resolved upon the inconsistencies in defendants' own statements. Their claim that enforcement of the note was conditioned upon the sale of the optioned property is inconsistent with their assertions that they obtained the assignment in return for executing the note, that the note would be given an "extension" if they found a buyer before the due date of the note, and that Earp was to indemnify them for their obligations to plaintiffs. A note that is unenforceable in the absence of a sale needs no extension, nor does an unenforceable note require indemnity. Defendants' assertions amount to admissions that the note was enforceable, even if there was not a sale of the property. These assertions, coupled with the terms of the note, *do* contradict their claim of an unstated condition.

 The admissions of a party receive an unusual deference in summary judgment proceedings. An admission is binding unless there is a credible explanation for the inconsistent positions taken by a party. (See, e.g., *Niederer* v. *Ferreira* (1987) 189 Cal.App.3d 1485, 1502-1504 [234 Cal.Rptr. 779]; 2 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 1990) § 46.16, p. 46-11; cf. *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 20-22 [112 Cal.Rptr. 786, 520 P.2d 10].) There is no explanation in the record of the inconsistencies between defendants' admissions and their claim the note was subject to an unstated condition that the property be sold.

Even under defendants' claim of an unstated condition the promissory note is a partially integrated agreement, i.e. it states some terms of the agreement between them. (See Rest.2d Contracts, § 210.) A claim of a *consistent* collateral oral agreement to a partially integrated agreement presents in the first instance a question of interpretation of the agreement. "The determination whether an alleged additional term is consistent or inconsistent with the integrated agreement requires interpretation of the writing in the light of all the circumstances, including the evidence of the additional term. For this purpose, the meaning of the writing includes not only the terms explicitly stated but also those fairly implied as part of the bargain of the parties in fact." (Rest.2d Contracts, § 216, com. b.)

 In these circumstances, we take defendants' unreconciled admissions which establish that the payment obligation was not conditioned upon

the sale of the property as if they were memorialized in the writing. So viewed against the uncontested background transaction, the writing is a note for which the consideration is the assignment of the FPI option with a specified due date and provisions calling for Earp to satisfy that obligation if there were no prior sale. As to such a writing the claimed collateral oral agreement conditioning the payment of the note upon the sale of the Hayward Golf Course property must be deemed inconsistent.

A claim of extrinsic evidence is not philosopher's stone capable of semantic alchemy. "[T]he asserted meaning must be one to which the language of the writing, read in context, is reasonably susceptible. If no other meaning is reasonable, the court should rule as a matter of law that the meaning is established." (Rest.2d Contracts, § 215, com. b, p. 136; see also *Thomas Drayage, supra*, 69 Cal.2d at p. 40.)

In light of the context of the transaction and defendants' admissions their contention of error has no merit.

## IV

*Defendants Have Not Established a Triable Issue of Fact of the Defense of Failure of Consideration*

 Defendants contend they established a triable issue of material fact of failure of consideration. Had they done so no objection could be raised on grounds of defects in the allegations of affirmative defense or the parol evidence rule. (Cal. U. Com. Code, § 3306; see *Richardson v. Lamp* (1930) 209 Cal. 668, 670 [290 P. 14].) Where, as here, the plaintiff is not a holder in due course, a general denial puts in issue the question whether consideration was given for the note which recites that it was given for valuable consideration. (Pomeroy, Code Remedies, *supra*, § 552, p. 904.) Such a defense, because it challenges a facial claim of the note, is not subject to the parol evidence rule. That brings us to a predicate question, whether the defendants have shown a failure of consideration. We conclude that they have not. Rather the defense is in the nature of frustration of purpose, which defendants have not made out.[15]

Defendants argue that they impugned the claim of consideration for the note (1) by proffering evidence that FPI had breached its obligation under the option contract with Earp to pursue development of the property and (2)

---

[15]It is uncertain whether the trial court applied the parol evidence rule to these matters. In any event, FPI does not join issue with the assertion of error in applying the parol evidence rule. We deem this a concession that the rule is inapplicable to the defense of failure of consideration. (Cf., e.g., *Coast Bank v. Holmes, supra*, 19 Cal.App.3d at p. 590.)

by showing that there was an assignment without prior written consent in violation of a clause of that contract.

FPI replies that there is no triable issue as to (1) because it adduced evidence that in Earp's opinion FPI had not totally breached the development provision of that contract prior to the assignment to defendants. As to (2), FPI asserts that the absence of evidence of a declaration of breach by Earp compels the conclusion that the FPI option was valid. As posed by the parties, the claim turns on the substantive law pertaining to the defense. We consider the claims seriatim.

## A.

Strictly speaking, "[f]ailure of consideration is the failure to execute a promise, the performance of which has been exchanged for performance by the other party." (*Bliss* v. *California Cooperative Producers* (1947) 30 Cal.2d 240, 248 [181 P.2d 369, 170 A.L.R. 1009]; also see, e.g., 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 757-763, pp. 688-691.) Here, the pertinent duty of FPI is not executory under the contract. Defendants' implicit claim is that FPI performed their principal promise, i.e., to assign, but that the right assigned was worthless. As posed, this is a claim in the nature of frustration of purpose.[16] Ordinarily frustration of purpose pertains to supervening events. It also may be established "[w]here, at the time a contract is made, a party's principal purpose is substantially frustrated without his fault by a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made . . . ." (Rest.2d Contracts, § 266, subd. (2).) While frustration is a different variety of claim than true failure of consideration, it has sometimes been spoken of as resting on a failure of consideration, and defendants' misnomer is excusable. (See, e.g., *Archer* v. *Edwards* (1937) 19 Cal.App.2d 253 [65 P.2d 115]; 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 787, p. 710.)

The defendants' theory is that they received a worthless option for the note. An implied premise is that the right assigned was valueless because it was subject to a complete defense by reason of FPI's breach of the obligation to pursue development of the property. It is conceivable that a failure of FPI to perform its obligations under the contract with Earp could give rise to a defense on his part to performance under the contract. If this is a material failure of performance and was uncured and incurable by the time that Earp would have been required to transfer his option on the property

---

[16]We imply no view whether these considerations might have afforded some other basis of defense or cross-action. None was pled or suggested in the trial court by defendants.

under the contract with FPI his obligation could have been discharged. (See Rest.2d Contracts, §§ 225, 237.) If Earp could lawfully refuse to transfer his option to defendants and did so, they would have obtained nothing in exchange for their promise, in the note, to pay FPI.

We assume for the sake of argument that defendants showed a triable issue of fact concerning the breach of the FPI-Earp contract by FPI and a potential defense of Earp to performance under that contract.[17] The fact that FPI was in breach of its contract with Earp does not amount to a frustration of the purpose of the agreement. This fact would be *material* to such a defense if it were related to a refusal by Earp to perform, a repudiation by Earp, or, perhaps, a demonstration that defendants' ability to exercise the FPI option was or likely would have been prevented because of the prospect of such conduct by Earp. ▮ To avert a party's duty the frustration must be substantial. "It is not enough that the transaction [will] become less profitable for the affected party or even that he will sustain a loss. The frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract." (Rest.2d Contracts, § 265, com. a.)

▮ It is apparent from the nature of the presentations in the summary judgment proceedings that defendants never attempted to exercise the FPI option. That reduces their prospects to showing that they did not do so or could not do so because of the reasonably perceived likelihood that Earp would refuse to perform on the ground of FPI's pre-assignment nonperformance of the development obligation. In this connection, the opinion of Earp concerning the importance of nonperformance of the development obligation by FPI is dispositive. It indicates that he would not have balked on that ground at the exercise of the FPI option by defendants. Indeed, that is the only inference that is reasonably deducible from the evidence. This in turn impels the inference that defendants' failure to exercise the option cannot be attributed to a reasonable perception that Earp would refuse because of FPI's alleged breach. This inference is reinforced by the other evidence which defendants tendered. Defendants staked out a position that Earp instigated their acquisition of the FPI option and agreed to hold them harmless for liability to FPI in that endeavor. The univocal inference that is impelled is that they could not have reasonably expected him to renege successfully.

---

[17]We note in passing that plaintiffs are incorrect in implying that the measure of breach is the opinion of Earp: "When performance of a duty under a contract is due any non-performance is a breach." (Rest.2d Contracts, § 235, subd. (2).) Defendants assert that if FPI breached the FPI-Earp option contract it was worthless. However, the mere existence of a potential justification for Earp to refuse to perform that was not invoked would not establish a defense of frustration of purpose for defendants.

In these circumstances the papers submitted show no triable issue as to any *material* fact pertaining to the claimed defense of failure of consideration, i.e, frustration of purpose. Hence, the summary judgment is not infirm on this ground. (Code Civ. Proc., § 437c, subd. (c).) We note that the countershowing rests in part on Earp's affirmation of his own state of mind. However, that is not, per se, a basis for denial of summary judgment. (Code Civ. Proc., § 437c, subd. (e).) Defendants raise no claim of abuse of discretion in reliance on this affirmation, and, in view of their failure to proffer or suggest evidence that supports the view that Earp would have refused to perform under the FPI option, we discern no basis for such a claim.

### B.

Defendants also claim that there was a failure of consideration on the view the assignment was worthless for the lack of prior written consent by Earp. This is a claim of frustration of purpose similar to the one previously discussed. Defendants say the assignment was worthless because the failure to obtain Earp's consent enabled him to refuse to perform under the FPI-Earp option contract. Once again, defendants proffered a potential justification for Earp's refusal to perform. As related, this is evidence of a triable issue of material fact only if coupled with evidence that Earp refused to perform or that defendants failed to exercise their option because of a reasonable perception that Earp would so refuse. The only available inferences in the record are to the contrary. The trial court did not err in granting summary judgment as to this claim.

Defendants rely upon the suggestion in 1 Miller and Starr, Current Law of Real Estate (1975 rev. ed.) section 2:37, that where there is an assignment contrary to a prohibition the obligor "probably can declare a breach of the contract and pursue his remedies to terminate the agreement." (*Id.* at p. 270, fn. omitted.) The suggestion is based upon analogy to case law which allows a lessor to terminate a lease where there is such an assignment. (See *ibid.*) We assume for the sake of discussion that defendants' evidence did show a potential legal justification on this ground for Earp to refuse to perform.

However, as with the justification discussed previously, this does not show that the assignment was worthless. There is no showing of the prospect of employment of this justification essential to the claim of frustration of purpose. Nor is it tenable that defendants were deterred from exercise of the option by their perception that Earp could successfully refuse to perform. The evidence defendants proffered is predicated upon the position that Earp instigated the supersession and agreed to hold them harmless for liability to FPI in that endeavor. The inference that is compelled is that they could not

have reasonably expected him to renege successfully. For lack of a colorable claim, we need not assess its materiality.

V

*The Defense of Sham Transaction*

 The defendants' remaining contention is that the trial court erred in granting the motion for summary judgment because they established a triable issue of material fact as to the defense the note was void, i.e., a sham not intended between themselves as a jural act. Defendants argue that Price's testimony that he did not intend to be bound by the note and that Hunt told him the note was only a formality for the record purposes of a corporation demonstrates there is a triable issue of fact that the note was a sham. The plaintiffs reply that this evidence was "properly excluded" as parol evidence because "it is in direct contravention of the express terms of the written promissory note." The reply misapprehends the nature of the parol evidence rule and proves too much; under plaintiffs' theory one could never show that a writing was a sham.

Defendants claim the note was not intended by the parties as an agreement altering their voluntary relations, i.e., it is no jural act at all. As related, the parol evidence rule is founded upon the existence of a jural act. Where the defense is that the writing is a sham, i.e., no jural act at all, the parol evidence rule, strictly speaking, has no application. (See, e.g., *P.A. Smith Co.* v. *Muller* (1927) 201 Cal. 219, 222-224 [256 P. 411]; 2 Witkin, Cal. Evidence (3d ed. 1986) Documentary Evidence, § 1004.) That the writing is a promissory note affords no categorical basis for exception. (See *Boies* v. *Wylie* (1952) 113 Cal.App.2d 243 [248 P.2d 76].)[18] That brings us to the question whether this defense could be maintained under the pleadings.

 There is nothing in the record to show that defendants were relying on an affirmative defense to tender this theory. Defendants submit on appeal that we should liberally construe their conclusory pled affirmative

---

[18]We do not imply that defendants' sailing in these waters is as smooth as they suppose. A sham contract is a pretense undertaken for the purpose of deceiving a third party. The cases indicate that estoppel principles may bar reliance on a claim of sham when enforcement of the ostensible contract is in the interests of the party upon whom the pretense is perpetrated. While such an estoppel is not truly founded on the parol evidence rule the action barring the claim of sham often is taken under that rubric. (See, e.g., 1A Corbin, Contracts (1991 Supp., pt. 1) § 197A, pp. 59-60; Jordan, *"Just Sign Here-It's Only a Formality": Parol Evidence in the Law of Commercial Paper* (1978) 13 Ga. L.Rev. 53, 78; *Shyvers* v. *Mitchell* (1955) 133 Cal.App.2d 569 [284 P.2d 826].) We imply no view on the reach of that doctrine on these facts.

defense of fraud in the inducement as colorably tendering the defense of sham transaction. Such a reading is beyond that semantic pale. Fraud in the inducement is a claim that one has been improperly induced into a jural act. Sham transaction is a claim that there was no jural act at all. The claims are different in kind and hinting at one cannot reasonably satisfy even the most minimal notice function of the existence of the other. Thus, we consider only what is put in issue by the general denial. For this we look to the material allegations of the complaint. It alleges that "On or about November 20, 1985, . . . defendants made and delivered to [Plaintiffs] their promissory note in writing a copy of which is attached" to the complaint. This alleges that the note was "made" or executed, i.e., was to have a jural effect as a note. This claim might be thought to arise under the denial of this allegation. It does not.

"Under the denial of 'execution' in an action on a note or other written contract, the defendant may prove that his signature was obtained by fraud: [citation]; or that the instrument was not delivered: [citation]." (Pomeroy, Code Remedies, *supra*, § 552, fn. 39, p. 904.) Thus, in *Lever* v. *Garoogian, supra*, 41 Cal.App.3d 37, the promissory note was represented to the purported maker as a receipt. For that reason it was never "executed" and the defense that it was not could be put in issue by a general denial. However, in *Carver* v. *San Joaquin Cigar Co.* (1911) 16 Cal.App. 761 [118 P. 92], a note was "executed and delivered in furtherance of a common design on the part of the payee and maker to defraud the payee's creditors." (*Id.* at p. 768.) By this scheme the note was intended by its maker to appear to the payee's creditors as an instrument having legal effect. The answer did not deny execution of the note. Rather, it alleged there was an agreement between the president of the corporation and the payee that "said note . . . was not[ ] executed by the . . . San Joaquin Cigar Company, and that the [company] . . . should not be bound by any of [its] terms . . . ." (*Id.* at p. 764.) The court said the "defense would have been available to the defendant against the payee had he sought to recover on the note . . . . Such a defense, however, is deemed to be new matter, which must be specially pleaded, and cannot be established under a general denial." (*Id.* at p. 768, citations omitted.)

This case resembles the *Carver* case. The defendants asserted as an affirmative defense that they were fraudulently induced to sign the note. That was done, so they say, to satisfy some recordkeeping requirements of a corporation. Their theory is that the note was not intended to have legal effect as to them. However, implicit in the argument is the assumption the note was to be viewed *as a note* by the corporation for purposes of furthering the venture of which the note was a part. For this reason it is argued that the note was the product of a sham transaction.

As in *Carver, supra*, 16 Cal.App. 761, the facts necessary to show that the transaction was a sham are matters not encompassed in the denial of the ultimate fact of execution alleged in the complaint. The defense is in the nature of "Yes—the facts alleged are true"—but they do not render us liable because of additional facts, i.e., those about the sham. Where a party participates in a sham the intention is that the note be taken as a jural act by the one upon whom the sham is perpetrated. It will not lie in the mouth of the participant to say there was no execution of the note. The defense, if any, is that there was an execution but that the plaintiff cannot take advantage of it. For that reason a denial of execution does not put such a theory in issue. Indeed, as noted, plaintiffs adduced in the summary judgment proceedings defendants' responses to requests for admissions admitting that they had executed the note. Moreover, defendants' claim of sham must be deemed artificial in view of their admissions that the note was enforceable which we have previously discussed with respect to their claim of unstated condition.

In light of the failure of pleading and the artificiality of the claim of sham we find no error in the grant of summary judgment.

### *Disposition*

The judgment is affirmed.

Sims, J., and Scotland, J., concurred.