Filed 12/11/14  Scholink v. Salinas Valley Mem. Healthcare Syst. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RON SCHOLINK, | H040057 |
| Plaintiff and Appellant, | (Monterey County Super. Ct. No. M103314) |
| v. | |
| SALINAS VALLEY MEMORIAL HEALTHCARE SYSTEM, | |
| Defendant and Respondent. | |

In this wrongful termination case, we must determine whether plaintiff's third cause of action for "Wrongful Termination based on Discrimination/Retaliation" states a common law tort claim for wrongful termination in violation of public policy—also known as a *Tameny*[1] claim—or a statutory tort claim for wrongful termination under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940, et. seq.; all further undesignated statutory references are to the Government Code).  The difference is critical since a *Tameny* claim cannot be brought against a public entity employer like defendant Salinas Valley Memorial Healthcare System (Hospital).

The third cause of action alleges, among other things, that plaintiff Ron Scholink (Plaintiff) was terminated by his employer, Hospital, in violation of his rights "under

---

[1]  *Tameny v. Atlantic Richfield Co*. (1980) 27 Cal.3d 167 (*Tameny*).

. . . Govt. Code [sections]. 12940 ff" (the FEHA), that "Plaintiff was required to and did file pre-litigation claims concerning these matters with the state [Department] of Fair Employment and Housing" (DFEH), and that he received a right-to-sue letter. The trial court concluded that these allegations stated a common law *Tameny* claim for wrongful termination in violation of public policy and granted summary adjudication of the third cause of action on the ground that an employee may not state such a common law tort claim against a public entity employer. We hold that the third cause of action states a statutory claim for wrongful termination under the FEHA, which may proceed against a public entity employer, and that the trial court erred in concluding that the third cause of action was a common law tort claim under *Tameny*. We will therefore reverse the summary judgment.

## FACTS AND PROCEDURAL HISTORY[2]

Plaintiff worked for Hospital from April 1998 until July 2011 in the cardiology department as a sonographer. Plaintiff is an insulin-dependent diabetic. He also suffers from chronic depression. It was undisputed that Hospital is a public entity.

Plaintiff's second amended complaint (the operative pleading) alleges:
(1) disability discrimination and failure to accommodate based on facts occurring while Plaintiff was still employed by Hospital prior to July 2011, and (2) wrongful termination and breach of an implied contract of employment based on his termination in July 2011. We shall organize our discussion of the facts and procedural history around these two separate time frames.

---

[2] The record does not contain any of the evidence submitted by either party in support of or in opposition to the motion for summary judgment. Since none of that evidence is before this court, the facts are based on the parties' separate statements. Although we do not have a complete record of the motion for summary judgment, the record is adequate to review the legal issue presented in this appeal.

## I. Alleged Disability Discrimination and Failure to Accommodate While Plaintiff Worked for Hospital

### A. 2007 Incident with Consultant, 2008 Incident with Cafeteria Worker, and Resulting Discipline

In 2007, Hospital hired a consultant (Consultant) who met with Plaintiff and later complained to Hospital that Plaintiff's responses to her questions were abrupt and made her feel uncomfortable. Hospital believed Plaintiff had violated its rules of conduct. Plaintiff disputed whether he was rude to Consultant and whether he had violated Hospital's rules. At about this time, Plaintiff objected to a remark that Tim Vitoux (one of his supervisors) made to him in a meeting, but declined to meet with Vitoux to discuss the issue. Plaintiff also declined Vitoux's offer to discuss Plaintiff's medical concerns.

In July 2007, Plaintiff received a "documentation of verbal counseling" from Hospital about his conduct toward Consultant and his failure to meet with Vitoux. Hospital placed Plaintiff on an "action plan," which required him, among other things, to take a course on communication skills.

In January 2008, a Hospital cafeteria worker filed a complaint with Hospital, claiming that Plaintiff was " 'pushy' " and " 'disrespectful' " toward her when he inquired about the carbohydrates in the cafeteria's food. Hospital concluded that Plaintiff's conduct was unacceptable and had violated his existing action plan, issued another "documentation of verbal counseling," and placed him on another action plan, which required him to (1) refrain from arguing with coworkers, (2) stop the use of abusive language, and (3) take additional communications classes. Plaintiff disputed whether he had acted inappropriately toward the cafeteria worker or had violated Hospital's rules or his action plan.

## B. First DFEH Complaint

In January 2009, Plaintiff filed a complaint with the DFEH, which alleged that between January 2008 and January 2009 Hospital and Vitoux had discriminated against him and harassed him because of his disability (diabetes). The DFEH issued a right-to-sue letter to Plaintiff the following day.

## C. Requests for Disability Accommodations in 2009

In January 2009, after Plaintiff filed his DFEH complaint, he met with Hospital's Employee Health Services (EHS) representatives to request flexible break and meal times as an accommodation for his diabetes. The representatives asked for a note from Plaintiff's doctor to support his accommodation request. A few days later, Plaintiff told one of the representatives he had not obtained the doctor's note, but "things were working out fine." In his separate statement, Plaintiff alleged that he did this because he was concerned about being harassed and possibly fired.

Plaintiff subsequently filed a workers' compensation claim for a stress-related injury and was off work from February 24 until May 12, 2009.

In June 2009, Plaintiff gave EHS two doctor's notes. The notes said he needed flexible meal and break times, food in his work area, and a set schedule to better control his blood sugars. Hospital asked Plaintiff to have his doctor clarify whether the accommodations were temporary or permanent, but said in the meantime it would process his request as a temporary (one month) request. Plaintiff argued that Hospital did not need to clarify the duration of his requested accommodation because his diabetes was a chronic, permanent condition. He also claimed that Hospital threatened to fire him if he did not withdraw his request for accommodation.

Plaintiff later told Hospital he was not going to get another doctor's note because he did not want to "make demands" on the cardiology department. He also asked EHS

4

not to process his accommodation request. But since Plaintiff had started the accommodation process, Hospital asked him to present a doctor's note stating he could return to work without restrictions. Hospital then granted Plaintiff's requests as a temporary accommodation. Two days later, Plaintiff provided Hospital with a doctor's note that stated he could return to work without restrictions. Plaintiff claimed he did this because he was concerned he would otherwise be fired.

### D. Second DFEH Complaint

In October 2009, Plaintiff filed a second complaint with the DFEH alleging that Vitoux had harassed him because he (Vitoux) had missed "a critical finding of a patient who later died" and that Vitoux was trying to get Plaintiff " 'to quit like he has done to other employees' " because Plaintiff knew about Vitoux's alleged malpractice. Plaintiff also alleged that he " 'was retaliated against for trying to join the union, disciplined on a break while trying to treat a blood sugar reaction, and told [he] would lose [his] job if [he] turned in requests for accommodations.' "

### E. Original and First Amended Complaints

In January 2010, Plaintiff filed his original complaint in the superior court. In October 2010, while Plaintiff was still employed by Hospital, he filed a first amended complaint that alleged two causes of action: (1) disability discrimination under the FEHA; and (2) refusal to accommodate his disability under the FEHA. The first amended complaint alleged that Hospital "acted discriminatorily toward Plaintiff" because of his medical conditions "in countless instances of work schedule settings, work assignments, deprivation of break times, insulting behavior toward Plaintiff, etc."

5

## II. *Wrongful Termination Claim*

### A. **Plaintiff's Alleged Violations of Hospital Rules and Privacy Laws in 2011**

Hospital workers went on strike in June 2011. During the strike, substitute workers performed echocardiograms. Vitoux later told the staff that one of the substitutes had performed 11 echocardiograms in one day, while regular staff completed far fewer studies each day. Plaintiff thought the substitutes must have done the echocardiograms negligently or Vitoux was lying, so he audited several of the studies. (Hospital alleged that Plaintiff audited 29 studies; Plaintiff could not recall how many studies he reviewed.)

At a department meeting on June 28, 2011, Plaintiff reported that he had audited the echocardiograms done by the substitutes. Hospital alleged that in the audit, Plaintiff reviewed protected patient health information in violation of the Health Insurance Portability and Accountability Act (HIPAA) (42 U.S.C. § 1320d et seq.) and Hospital policy. Plaintiff disputed this allegation. He stated that as a matter of custom and practice, sonographers had access to patient records to review the work of colleagues to "maintain high professional standards as well as honesty among personnel" and that such audits were part of his duties. Plaintiff also alleged that he reviewed "the technical work only," and not the patients' protected health information.

On July 5, 2011, Hospital placed Plaintiff on paid administrative leave pending an investigation into whether Plaintiff had violated HIPAA or Hospital's privacy policy. Hospital presented evidence that no one in management or the union had asked Plaintiff to audit the echocardiograms, that the "lead echo technician" and the department manager were the personnel assigned to review echocardiograms for purposes of peer review or quality review, and that Plaintiff "was never assigned the job of case selection for peer review." Plaintiff disputed these facts, arguing that all technicians performed such reviews and no assignment was necessary. Hospital also presented evidence that when

6

cases are presented for training purposes, all patient identifiers are omitted. Plaintiff disputed this, asserting that another Hospital employee had presented two case studies that contained patient identifying information.

Hospital concluded that Plaintiff's audit was not for a business need or the care of a patient, that Plaintiff had made a willful choice to access patient records for personal reasons, and that his actions were a "Breach of Confidentiality" under federal and state law and several Hospital policies. Hospital terminated Plaintiff effective July 8, 2011, and reported Plaintiff's action to state authorities and the patients involved as a breach of confidentiality (Health & Saf. Code, § 1280.15).

### B. Plaintiff's Third DFEH Complaint

On August 29, 2011, Plaintiff filed a third complaint with the DFEH that alleged gender and disability discrimination and retaliation. With regard to gender discrimination, Plaintiff alleged that his "supervisor, Christie Kearnes, was biased against male workers." Plaintiff later alleged in his second amended complaint that the DFEH had issued him a right-to-sue letter.

### C. Second Amended Complaint

After Plaintiff received the right-to-sue letter on his third DFEH complaint, he amended the complaint he had filed in the superior court. The second amended complaint, filed on September 29, 2011, alleged the same two causes of action as the first amended complaint, verbatim. But Plaintiff added a third cause of action for "Wrongful Termination based on Discrimination/Retaliation" and a fourth cause of action for "Breach of Implied Contract of Employment." Unlike the first two causes of action, which alleged disability discrimination and failure to accommodate *while Plaintiff was employed by Hospital*, the third and fourth causes of action *were based on Plaintiff's termination on July 8, 2011*.

7

### III. *Motion for Summary Judgment or, in the Alternative, Summary Adjudication*

Hospital moved for summary judgment or, in the alternative, summary adjudication of each cause of action in the second amended complaint. Hospital argued that Plaintiff's first cause of action for disability discrimination under the FEHA failed as a matter of law because (1) there was no evidence of discriminatory intent; (2) his claims based on the verbal counseling were barred by the statute of limitations; and (3) he was disciplined and terminated for legitimate, nondiscriminatory reasons. Hospital argued that Plaintiff's second cause of action for failure to accommodate failed because (1) Plaintiff failed to exhaust his administrative remedies; (2) Hospital provided the requested accommodations; and (3) Plaintiff caused the interactive process to end. Hospital asserted that Plaintiff's third cause of action for wrongful termination failed because Plaintiff was "terminated for a legitimate, non-discriminatory reason, specifically his violation of the HIPAA statute and Hospital policy." Finally, Hospital argued that Plaintiff could not state a fourth cause of action for breach of an implied employment contract because Hospital is a public entity, and employment by a public entity is by statute, not contract.

In opposition to the motion, Plaintiff argued that there were triable issues of material fact that precluded summary adjudication of each cause of action.

In its reply, based on the undisputed fact that Hospital is a public entity, Hospital argued—for the first time—that Plaintiff's third cause of action for wrongful termination was also barred because "a common law action for wrongful termination in violation of public policy, also known as a *Tameny* action, cannot be brought against a public entity." Hospital made the same argument at the hearing on the motion for summary judgment. The court took the motion under submission.

In August 2012, the parties discussed the pending motion with the court at a settlement conference and the court announced that its tentative ruling was to grant

8

summary adjudication of the third cause of action. Three days later, Plaintiff's counsel sent the court a letter, which asserted that Hospital was "inviting the court to engage in clear error" and that Plaintiff's use of the title "Tortious Wrongful Termination" for his third cause of action could refer to either a common law tort or a statutory tort and the text of the second amended complaint "makes it clear that Plaintiff is asserting a statutory" claim under the FEHA, which may proceed against a public entity.

Hospital objected via letter brief that briefing on the motion for summary judgment was closed. Hospital also argued that Plaintiff had " 'tether[ed]' his tortious wrongful termination claim to fundamental public policy delineated in Government Code [section] 12940. It is not uncommon for a plaintiff to [plead] a statutory discrimination claim (as plaintiff has done in his first cause of action) and then plead, in addition, that his statutory claim gives rise to a tort cause of action sounding in wrongful termination in violation of public policy. That is precisely what [Plaintiff] has done." (Original underscoring.)

The court denied Hospital's motion for summary adjudication of the first and second causes of action and hence its motion for summary judgment. But the court granted summary adjudication of: (1) the third cause of action for wrongful termination, reasoning that the Government Code "bars common law wrongful termination actions against public entities and Plaintiff has not stated a statutory cause of action"; and (2) the fourth cause of action for breach of contract, reasoning that "[p]ublic employees do not hold their employment by contract."

Plaintiff sought writ review, which this court denied. Plaintiff then moved for reconsideration of the ruling on the third cause of action in the trial court, which the court denied.

9

*Stipulation and Judgment*

In July 2013, shortly before trial, the parties stipulated that Plaintiff would dismiss his first two causes of action without prejudice, that Hospital would waive any statute of limitations defense that may arise as a result of the stipulation, that judgment would be entered for Hospital on the third and fourth causes of action, that Plaintiff would appeal the judgment as to the third cause of action, and that if Plaintiff prevailed on appeal, he could re-file the first and second causes of action. The parties also agreed that if Plaintiff lost the appeal, then Plaintiff would dismiss the first two causes of action with prejudice. Based on the order summarily adjudicating the third and fourth causes of action and Plaintiff's dismissal of the first and second causes of action without prejudice, the court entered judgment for Hospital.

## DISCUSSION

Plaintiff contends the trial court erred when it granted summary adjudication of his third cause of action because the court erroneously interpreted the third cause of action as alleging a common law tort claim for wrongful termination in violation of public policy when, in fact, it alleged a statutory tort claim for wrongful termination based on a violation of the FEHA. Plaintiff does not dispute that under the Government Claims Act, he may not assert a common law wrongful termination claim against Hospital because it is a public entity. But he argues that he may pursue a statutory wrongful termination claim against Hospital under the FEHA. Plaintiff also argues that the court treated the motion for summary judgment like a demurrer and abused its discretion when it denied him leave to amend to state a statutory, as opposed to a common law, claim.

Hospital argues that the third cause of action is a common law claim for wrongful termination that may not proceed against Hospital because it is a public entity. Hospital also argues that the nature of the wrongful termination claim was undisputed in the

10

proceedings below. Hospital contends that even if it did not move for summary adjudication of the third cause of action on the ground that it was a public entity, the trial court could still have granted summary adjudication on that ground. Hospital argues that the court did not abuse its discretion in denying leave to amend because: (1) Plaintiff never requested leave to amend in the trial court, (2) the third cause of action cannot be amended to state a viable claim, and (3) Hospital would be prejudiced by the delay in amending the complaint.

Before addressing these contentions, we must first determine whether, in light of the parties' stipulation, the judgment is appealable under the one final judgment rule.

*Appealability*

"A judgment that disposes of fewer than all the causes of action framed by the complaint is not final in the fundamental sense as to any parties between whom another cause of action remains pending." (*Sullivan v. Delta Air Lines, Inc*. (1997) 15 Cal.4th 288, 307 (*Sullivan*), citing *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 741.)

In October 2013, after Plaintiff filed his notice of appeal, the California Supreme Court decided *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097 (*Kurwa*). In *Kurwa*, the court held that when the trial court has resolved some causes of action and other causes of action are voluntarily dismissed, but the parties agree to preserve the voluntarily dismissed counts for potential litigation following an appeal—as happened in this case— the judgment rendered does not dispose of all of the claims between the parties and is therefore not appealable under the one final judgment rule (Code Civ. Proc., § 904.1, subd. (a)). (*Id.* at p. 1105.) An appeal from a judgment that is not final under the one final judgment rule must be dismissed, "unless the violation can be cured by amending the judgment." (*Sullivan*, *supra*, 15 Cal.4th at pp. 307-308.)

11

Acknowledging that the judgment in this case is not appealable under *Kurwa*, the parties entered into a new stipulation after the appeal was filed in which Plaintiff agreed (1) not to "further pursue" his first cause of action for disability discrimination and his second cause of action for failure to accommodate, "which means it is as if those claims are now dismissed *with prejudice*," and (2) that there is no tolling agreement regarding those claims. (Italics added.) The parties filed that stipulation in this court. We must determine what effect, if any, this new stipulation has on the appealability of the judgment.

*Sullivan* described two situations in which an appellate court may exercise its discretion to preserve an appeal by amending the judgment. First, "[w]hen 'the trial court's failure to dispose of all causes of action results from inadvertence or mistake rather than an intention to retain the remaining causes of action for trial' [citation], the appellate court has discretion to 'preserve the appeal by amending the judgment to reflect the manifest intent of the trial court' [citations]." (*Sullivan*, *supra*, 15 Cal.4th at p. 308.) Second, "[w]hen a party expressly waives on appeal the right to litigate an unresolved cause of action that deprived the judgment as entered of finality, the appellate court may give effect to the waiver by amending the judgment to reflect a dismissal of that cause of action with prejudice." (*Id.* at pp. 308-309.) In *Sullivan*, for example, one cause of action remained unresolved after trial because the jury had deadlocked on that claim. In her reply brief before the California Supreme Court, the plaintiff declared that she waived any right to a retrial on the unresolved claim. Since the issues on appeal had been fully briefed and argued, and the case was ready for decision, the Supreme Court held that it was appropriate to exercise its discretion (1) "to direct that the judgment be amended . . . in the interests of justice and to avoid unnecessary delay" and (2) "to direct that these amendments to the judgment take effect nunc pro tunc as of the date that the judgment was purportedly rendered." (*Id.* at p. 309.)

12

In the stipulation filed in this court, Plaintiff has agreed not to pursue his first two causes of action further, "as if those claims are now dismissed with prejudice." Since the issues have been fully briefed and Plaintiff has waived any right to trial on the first two causes of action, we shall exercise our discretion to preserve the appeal and will direct the trial court to amend the judgment nunc pro tunc to reflect a dismissal of the first and second causes of action *with prejudice*. Since those claims have been dismissed with prejudice, the judgment (as amended) no longer violates the one final judgment rule and we may consider the merits of the appeal.

### *Rules Governing Summary Adjudication and the Standard of Review*

We review an order granting summary judgment or summary adjudication de novo. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 858 (*Serri*), citing *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar* ) and *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.)

"In undertaking our independent review, we apply the same three-step analysis used by the trial court. First, we identify the issues framed by the pleadings. Second, we determine whether the moving party has established facts justifying judgment in its favor. Finally, in most cases, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable issue of material fact." (*Serri, supra,* 226 Cal.App.4th at pp. 858-859.) "A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1).)

Unlike a typical appeal from a summary judgment, which generally involves the second or third steps in the analysis, this case concerns the first step: identifying the issues framed by the pleadings. The issues in this appeal require us to interpret the allegations of the third cause of action. This involves the interpretation of a writing,

13

which we review de novo.  (*Parsons v. Bristol Development Co*. (1965) 62 Cal.2d 861, 865-866.)

### *Public Entity Immunity from Common Law Torts Under Government Claims Act*

"At common law, the government was immune from suit under the doctrine of sovereign immunity, but beginning in the early 20th century, this doctrine began to be criticized as outmoded and overbroad.  [Citations.]  In 1957, the Legislature authorized the California Law Revision Commission to conduct a study to determine whether the common law doctrine of sovereign immunity should be abolished or revised in California.  [Citations.]"  (*DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 542-543 (*DeJung*).)  "In January 1963, the Law Revision Commission issued its Recommendations, upon which the Legislature relied in large part in enacting the California Tort Claims Act of 1963."  (*DeJung*, at p. 543, citing § 815.)  The name of the act was later changed to the "Government Claims Act."  (Stats. 2012, c. 759, § 5; see *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 734, 741-742.)  "The [Government] Claims Act applies to all public entities and their employees, . . . .  [Citations.]  It permits private tort actions against government entities and employees where permitted by statute, but otherwise retains the general concept of immunity for government entities. (§ 815.)"  (*DeJung*, at p. 543.)

"The Government Claims Act (§ 810 et seq.) establishes the limits of common law liability for public entities, stating:  'Except as otherwise provided *by statute:*  [¶] (a) A public entity is *not liable* for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.'  (§ 815, subd. (a), italics added.)  The Legislative Committee Comment to section 815 states:  "This section *abolishes all common law or judicially declared forms of liability for public entities,* except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation . . . ."  ([Citation], italics added.)  Moreover, [California

14

Supreme Court] decisions confirm that section 815 abolishes common law tort liability for public entities. [Citations.]" (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876 (*Miklosy*).) "Under the Government Claims Act (Gov. Code, § 810 et seq.), there is no common law tort liability for public entities in California; instead, such liability must be based on statute. ([Citations;] see *Williams v. Horvath* (1976) 16 Cal.3d 834, 838 . . . ['intent of the act is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances'].)" (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897.)

***Hospital is Immune from a Common Law Wrongful Termination Action, but not a Statutory Wrongful Termination Claim under the FEHA***

In *Tameny,* the California Supreme Court "stated: '[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions.' ([*Tameny*, *supra*, 27 Cal.3d] at p. 170, . . . .) Later, in *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1095, . . . (*Gantt* ), [the court] clarified that a *Tameny* cause of action must be "carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions." ' " (*Miklosy*, *supra*, 44 Cal.4th at p. 898.) "The tort [the Supreme Court] recognized in *Tameny*, and reaffirmed in *Gantt*, is premised on the wrongful termination of an employment relationship. If an employer terminates an employment relationship for a reason that contravenes some fundamental public policy, then the employer breaches a general duty imposed by law upon all employers and the employee's remedy therefore sounds in tort." (*Miklosy*, at p. 900, citing *Tameny*, *supra*, 27 Cal.3d at p. 176.)

In *Miklosy*, the Supreme Court examined the interplay between a common law *Tameny* claim for wrongful termination in violation of public policy and a wrongful termination claim based on statute. It noted that in *Palmer v. Regents of University of*

*California* (2003) 107 Cal.App.4th 899 (*Palmer*), "the Court of Appeal applied section 815 in . . . a whistleblower retaliation claim against the University of California. The court observed: 'The only statutory authorization for a civil damage action based on alleged retaliation against a University of California employee for reporting improper activity is section 8547.10. Accordingly, a university employee who believes she is the victim of retaliation is limited to a statutory claim for damages under section 8547.10.' [Citation.] The [*Palmer*] court went on to affirm summary judgment against the plaintiff, who had asserted only a *Tameny* cause of action: 'Because the "classic *Tameny* cause of action" is a common law, judicially created tort . . . and not authorized by statute, it is not properly asserted against the Regents.' " (*Miklosy*, at p. 899, citing *Palmer*, at p. 909.) Although the Court of Appeal's discussion of section 815 in *Palmer* was dictum, the California Supreme Court later agreed "that section 815 bars *Tameny* actions against public entities." (*Miklosy*, at pp. 899-900, citing *Palmer*, at p. 910 & fn. 11.)

Although a public employee cannot state a common law *Tameny* claim for wrongful termination in violation of public policy against a public entity employer, he or she may state a statutory claim for wrongful termination in violation of the FEHA against a public entity. "Indeed, FEHA expressly makes public employers, like private employers, directly liable for violations of that law, . . . . Section 12926, which defines various terms used in the FEHA statutory scheme, provides that the term ' "[e]mployer" includes . . . *the state or any political or civil subdivision of the state,* and cities . . . .' (§ 12926, subd. (d), . . . .)" . . . [T]he inclusion of 'the state or any political or civil subdivision of the state' within FEHA's definition of 'employer' constitutes an express declaration of the Legislature's intent to subject public entities to liability for violations of FEHA, . . . .' " (*DeJung*, *supra*, 169 Cal.App.4th at pp. 545-546, fn. omitted, italics in *DeJung*, citing *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 989 (*Caldwell*).)

"The FEHA 'creates *direct* statutory rights, obligations and remedies between a covered "employer," private *or public*, and those persons it considers or hires for

employment.' [Citation.] . . . By 'otherwise provid[ing]' for direct entity liability, the FEHA's provisions provide a viable basis for <u>tort liability</u> against a public employer . . . ." (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1015, original italics, underscoring added, [sexual harassment claim under FEHA], quoting *Caldwell*, *supra*, 10 Cal.4th at p. 989, fn. 9.)

### The Third Cause of Action States a Statutory Claim

Resolution of the parties' contentions require us to determine whether the third cause of action states a common law tort claim for wrongful termination in violation of public policy, a statutory tort claim under the FEHA, or both. The pleadings play a key role in a motion for summary judgment or summary adjudication. The function of the pleadings " 'is to delimit the scope of the issues' " and to frame "the outer measure of materiality in [the] proceeding." (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381.) "The materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment.' [Citations.]" (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 (*Conroy*).) "Accordingly, a defendant moving for summary judgment is only required to negate the plaintiff's theories of liability *as alleged in the complaint;* that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493 (*Hutton*), citing *Conroy*, at pp. 1254-1255 and other cases.)

"Cause of action" has been defined as " 'simply the obligation sought to be enforced.' " (*Eichler Homes of San Mateo, Inc. v. Superior Court* (1961) 55 Cal.2d 845, 847.) " 'In a broad sense, a "cause of action" is the *invasion of a primary right* (e.g. injury to person, injury to property, etc.) . . . . [¶] However, in more common usage, "cause of action" means a group of related paragraphs in the complaint reflecting *a separate theory of liability* . . . . [¶] As used in the [summary judgment statute], "cause

17

of action" should be interpreted in the latter sense (theory of liability).' [Citation.]" (*Lilienthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1853; original italics.)

Plaintiff's second amended complaint is on the Judicial Council form for personal injury, property damage, and wrongful death actions. The title identifies it as the "2nd Amended Complaint" for "Discrimination re Medical Condition; Wrongful Termination." The third page of the Judicial Council form describes the third cause of action as "Tortious Wrongful Termination," and the third cause of action attached to the Judicial Council form is labeled "Wrongful Termination based on Discrimination/Retaliation." None of these headings or labels indicate whether the claim is a common law *Tameny* claim or a statutory claim under the FEHA.

The third cause of action itself alleges: "On July 8, 2011 Defendant [Hospital] terminated Plaintiff's employment wrongfully, based on motives of discrimination and/or retaliation. Defendant asserted it was firing Plaintiff for an alleged HIPPA [*sic*] violation, but in fact the firing was motivated by (1) discriminatory treatment based on (a) Plaintiff's medical conditions (diabetes and/or depression), and/or (b) Plaintiff's requests for accommodations for said medical conditions, and/or (c) Plaintiff's gender (male), and (2) retaliatory action by Defendant against Plaintiff for exercising his legal rights to (a) file this medical discrimination lawsuit and pre-litigation claims related to it, and/or (b) engage in various lawful labor activities in connection with his employment, including but not limited to union activities."

The third cause of action also alleges: "Said actions by Defendant violated Plaintiff's rights under Cal. Govt. Code secs. 12940 ff., Title VII of the federal Civil Rights Act and the Americans With Disabilities Act. [¶] Plaintiff was required to and did file pre-litigation claims concerning these matters with the state [DFEH] and the federal Equal Employment Opportunity Commission. Both agencies have now concluded their processing of said claims and have issued to Plaintiff their notices of

18

right-to-sue." The third cause of action also claims various damages as a "proximate consequence of Defendant's actions."

The phrase "Cal. Govt. Code secs. 12940 ff." in the third cause of action is an express reference to the FEHA, which suggests that Plaintiff has pleaded a statutory cause of action. But *Gantt* instructs that a common law claim for wrongful termination must be tethered to fundamental policies that are delineated in either constitutional or statutory provisions. (*Gantt*, *supra*, 1 Cal.4th at p. 1095.) Thus, the phrase may be interpreted as satisfying this requirement from *Gantt*.

But the third cause of action also alleges that Plaintiff filed a complaint regarding his wrongful termination with the DFEH and received a right-to-sue letter. The timely filing of an administrative complaint and the exhaustion of that remedy is a prerequisite to maintaining a civil action for damages under the FEHA. (§ 12965, subd. (b); *Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211, 214.) But administrative "exhaustion is not required before filing a civil action for damages alleging nonstatutory causes of action," including a common law tort claim for wrongful termination in violation of public policy. (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 88 (*Rojo*).) Thus, the allegations that Plaintiff filed a DFEH complaint and exhausted his administrative remedies relating to his termination supports the conclusion that the third cause of action states a statutory, not a common law claim.

*Rojo* instructs that an "employee, of course, may elect to waive the statutory cause of action and remedies, and proceed directly to court on the common law claims [citation]; alternatively, the employee may pursue both the administrative and the judicial avenues, either sequentially [citations] or simultaneously, in the latter case amending his or her complaint to join the FEHA cause of action once the Department has issued the right-to-sue letter [citation]." (*Rojo*, *supra*, 52 Cal.3d at p. 88.) Plaintiff did something similar here, but he alleged only statutory claims. He filed his original and first amended complaints alleging disability discrimination and failure to accommodate under the

19

FEHA. After he was terminated, he filed a third DFEH complaint. And after the DFEH issued the third right-to-sue letter, Plaintiff amended his complaint in the superior court to add another FEHA cause of action based on his wrongful termination. Thus, the timing of the amendment also supports the conclusion that the third cause of action states a statutory tort claim for violation of the FEHA.

Analysis of the first two causes of action also supports this conclusion. The first cause of action alleged that Hospital "acted discriminatorily toward Plaintiff" because of his medical conditions "in countless instances of work schedule settings, work assignments, deprivation of break times, insulting behavior toward Plaintiff, etc. . . . all in violation of Government Code 12940 et seq. (Discrimination based on disability-medical condition)." The second cause of action alleged that "[d]espite Plaintiff's many requests" for accommodation, Hospital "has consistently and continually refused to take any such accomodating [*sic*] actions in numerous situations, including but not limited to work schedules, break schedules, work assignments and other working conditions." The first two causes of action allege disability discrimination and failure to accommodate while Plaintiff still worked for Hospital. They do not mention his termination. This makes sense since Plaintiff filed his first amended complaint before he was terminated. In addition, he did not amend his first two causes of action when he filed his second amended complaint, which added the third and fourth causes of action and was filed after he was terminated.

Unlike the first two causes of action, the third cause of action alleges that Plaintiff was terminated based in part on his medical conditions and requests for accommodation. Thus, the factual basis of the third cause of action is different from that of the first two causes of action. At the hearing on the motion for summary judgment, Hospital's counsel acknowledged that the first cause of action for disability discrimination in violation of the FEHA did not allege that Plaintiff was terminated because of his disability.

20

Based on our analysis of the second amended complaint, we conclude that the third cause of action states a statutory claim for wrongful termination in violation of the FEHA, which may proceed against a public entity. We also conclude that the court erred when it held that the third cause of action stated a common law *Tameny* claim for wrongful termination in violation of public policy as the basis to grant summary adjudication of the third cause of action.

Citing its undisputed material fact (UMF) number 102, Hospital argues that it was undisputed that the third cause of action was a common law claim for "wrongful termination," not a FEHA claim. Hospital's UMF number 102 asserted in part that the third cause of action alleged a cause of action for "[w]rongful termination based on discrimination/retaliation." Plaintiff agreed that this fact was undisputed. But Hospital's UMF number 102 does not distinguish between a common law claim for wrongful termination and a statutory claim. We therefore disagree that the nature of the claim was undisputed in the proceedings below.

Hospital also argues that if Plaintiff wanted to bring a FEHA claim against Hospital, "he should have amended his FEHA cause of action to add termination and retaliation in violation of the FEHA when he filed the second amended complaint."[3] It is clear from Hospital's brief that its reference to the "FEHA cause of action" means

_____

[3] It appears that when Hospital prepared its motion for summary judgment, it assumed the first cause of action already included these post-termination allegations. In its separate statement, under the heading "FIRST CAUSE OF ACTION[,] DISABILITY DISCRIMINATION[,] Issue 4," Hospital argued "Plaintiff's *First Cause of Action* for Disability Discrimination fails as a matter of law because Hospital *terminated* plaintiff for a legitimate nondiscriminatory reason." (Italics added.) Hospital then set forth 38 "undisputed material facts" related to the events after the June 2011 strike that led to Plaintiff's termination. But the first cause of action did not plead wrongful termination. The trial court denied Hospital's motion for summary adjudication of the first cause of action, finding that "Plaintiff has raised questions of fact as to whether there was discriminatory intent and a reasonable attempt to accommodate him." That ruling is not at issue on appeal.

21

Plaintiff's first cause of action for disability discrimination in violation of the FEHA. When amending his complaint after he was fired, Plaintiff elected to allege facts related to his termination in his third cause of action. Hospital cites no authority that required Plaintiff to amend his first cause of action instead of pleading a separate FEHA claim based on his termination in the third cause of action. (See *Mathieu v. Norrell Corp.* (2004) 115 Cal.App.4th 1174, 1188-1189 [complaint that charged both sexual harassment and retaliation for complaining about the harassment alleged separate and distinct causes of action for purposes of summary adjudication because harassment and retaliation are separate bases for employer liability under the FEHA].)

Hospital also argues that Plaintiff "never sought leave to amend the second amended complaint to add claims of termination and retaliation in violation of the FEHA, and he may not seek leave to amend for the first time on appeal." And Hospital asserts that Plaintiff could have requested leave to amend after Hospital raised the immunity issue in its reply papers, at the hearing on the motion for summary judgment, after the court ruled on the motion, or after "Hospital's counsel educated him in what he should have done at the hearing" on the motion for reconsideration. Finally, Hospital asserts that since Plaintiff was not diligent in requesting leave to amend, he should not be allowed to amend, and that amendment at this time will result in prejudice to Hospital because of the passage of time. Since the third cause of action states a statutory claim for wrongful termination in violation of the FEHA, however, Plaintiff was not required to seek leave to amend prior to the hearing on the motion for summary judgment.

### DISPOSITION

We direct the trial court to amend the judgment entered on July 13, 2013, to reflect a dismissal nunc pro tunc of the first and second causes of action with prejudice. The judgment, as amended, is reversed and the case is remanded to the trial court for further

22

proceedings on the third cause of action for the statutory claim of wrongful termination in violation of the FEHA.

_____
Márquez, J.

WE CONCUR:

_____
Rushing, P. J.

_____
Elia, J.