Filed 11/12/15  Alonzo v. Center for A.I.D.S. Research CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| BLANCO ALONZO,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>CENTER FOR A.I.D.S. RESEARCH, EDUCATION AND SERVICES - SACRAMENTO,<br><br>        Defendant and Respondent. | C074788<br><br>(Super. Ct. No. 34--2010-00092112-CU-MM-GDS ) |

In this action alleging medical malpractice and related claims, plaintiff Blanco Alonzo appeals from a judgment entered after the trial court granted defendant The Center for A.I.D.S. Research, Education and Services-Sacramento (CARES)'s motion for summary judgment.  As we shall explain, the bulk of this appeal rests on theories that were not pleaded in the complaint or on facts as to which objections were sustained by evidentiary rulings that are not properly challenged on appeal.  We shall affirm the judgment.

1

## BACKGROUND

Alonzo became HIV-positive through unprotected sexual activity and sued CARES--a non-profit clinic--for not preventing his condition. His pleaded theories are as follows: (1) medical negligence; (2) negligent hiring and supervision; and (3) disparate treatment under the Unruh Civil Rights Act (Civ. Code, § 51 et seq.).[1]

Alonzo's complaint vaguely alleges that beginning on or about August 28, 2009, CARES undertook to provide medical services to Alonzo, in particular relating to HIV exposure, but failed to exercise due care, causing him injury. The second count alleges CARES failed to properly supervise staff members and ensure their competence, but provides no details. A third count alleged that CARES refused Alonzo services because of its "knowledge that plaintiff had previously tested HIV negative, notwithstanding that he recently had been exposed to HIV and met the regulatory criteria for treatment."

After entering a general denial and raising boilerplate defenses, CARES moved for summary judgment. This motion relied on discovery responses in which Alonzo clarified his claim and alleged in part that CARES breached a purported duty to administer prompt post-exposure prophylaxis (PEP) treatment after Alonzo notified CARES that he recently had been exposed to HIV. In part, a defense expert opined that PEP treatment is ineffective after 72 hours, and Alonzo's medical records showed that on August 28, 2009, he told CARES that he had had unprotected sex on August 6, 2009. In the expert's opinion, this exposure occurred too long before for the PEP treatment window to be of use; therefore, CARES did not breach any duty of care regarding PEP treatment.

---

[1] On appeal, Alonzo concedes the negligent hiring and supervision count stands or falls with his general medical negligence count.

2

In opposing summary judgment, Alonzo largely relied on his own declaration and the defense expert's declaration, and disputed that he had presented at CARES too late, averring that his last exposure was on August 25, not August 6. Although Alonzo alluded to his own unnamed expert, no such expert appears in the record.[2]

A defense declaration showed CARES was open weekdays from 9:00 a.m. to 5:00 p.m. The defense reply pointed to documents Alonzo tendered, showing he had unprotected sex *early* on the morning of August 25. The defense expert noted that more than 72 hours had passed before Alonzo sought help on August 28.

The motion was denied. In part, the trial court reasoned that the facts tendered on the motion showed Alonzo had unprotected sex on the morning of August 25, CARES was open on August 28, and CARES failed to establish that Alonzo arrived too late on August 28 for the PEP treatment to be useless. Thus, there could be a window during which the PEP treatment may have worked.

Alonzo's subsequent deposition testimony established that he was the first patient at CARES at 9:00 a.m. on August 28. He had called the day before, at 3:00 and 4:00 p.m., but his calls had not been returned, so he asked for a supervisor to explain why he had not been contacted about his partner's diagnosis--even anonymously, that is, without using his partner's name. Had he been contacted, he would have received the PEP treatment within the 72-hour window. Alonzo testified that he and his partner had unprotected sex on August 25 only because they thought they were each HIV-negative. Alonzo first testified that he and his partner had sex before 7:00 a.m. that morning--more than 72 hours before he went to CARES after learning his partner was HIV-positive. On a later day of Alonzo's deposition, he testified that he did not know what time he last had sex, stating it was "very early" but he could not say whether it was before or after

---

[2] Later, Alonzo named only the defense expert as his trial expert.

7:00 a.m., and that he had been guessing earlier. In the earlier session, Alonzo had testified 7:00 a.m. was "morning," not "early" morning. All relevant testimony came after Alonzo had been instructed not to guess when answering questions.

Alonzo's partner had testified in his deposition he had had sex with Alonzo five or six times--always unprotected--beginning in June 2009, and last had sex with him on August 22; he learned from CARES that he was HIV-positive on August 25; and he told Alonzo he was HIV-positive late on the afternoon of August 27. This shows that Alonzo could not prove his PEP theory via his partner's testimony.

Based on this new deposition evidence, CARES renewed its motion for summary judgment. (See Code Civ. Proc., § 1008, subd. (b); *Graham v. Hansen* (1982) 128 Cal.App.3d 965, 970.) Reasoning that Alonzo had sex with his partner before 7:00 a.m. on August 25, i.e., *more* than 72 hours before Alonzo told CARES he had been exposed, after 9:00 a.m. August 28, CARES argued this definitively closed the PEP treatment window.

In opposition, Alonzo contended that CARES breached a duty to tell him when CARES learned his partner was HIV-positive, and also pointed to his own declaration, in which he averred he had called CARES the prior afternoon, and argued he had not been provided with appropriate services that earlier day.

In reply, CARES objected that Alonzo had never pleaded a failure to warn theory, or previously mentioned it in discovery. As for the negligence claims, because Alonzo was relying on the defense expert to establish a breach of medical standards, he could not raise a triable issue because the defense expert opined the PEP treatment would only work if administered within 72 hours, and Alonzo testified he did not know what time he last had sex three days before, and therefore could never prove he was within the 72-hour PEP treatment window.

The trial court sustained many, but not all, of the evidentiary objections lodged by CARES, including several directed at the portions of Alonzo's declaration that purported to retract or negate Alonzo's deposition testimony. (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22.) The trial court then granted the motion for summary judgment.

In a motion for reconsideration filed 10 days later, Alonzo contended new facts and a newly found regulation showed CARES had a duty, as a "primary care clinic" to provide services to Alonzo, including PEP education and the ability to respond to medical emergencies. This motion was denied.

A formal order granting summary judgment was filed, followed by a judgment, from which Alonzo timely appealed. [3]

## DISCUSSION

### I

### *Standard and Scope of Review*

"We review the trial court's grant of summary judgment de novo. [Citation.] We consider all the evidence offered in connection with the motion, *except that which the trial court properly excluded*. [Citation.] In conducting our de novo review, we must view the evidence in a light favorable to plaintiffs, liberally construing their evidentiary submission while strictly scrutinizing defendant's showing, and resolving any evidentiary doubts or ambiguities in plaintiff['s] favor." (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1067, italics added.)

---

[3] We decline CARES's request that we reconsider our order reinstating the appeal. (Cf. *Modica v. Merin* (1991) 234 Cal.App.3d 1072, 1074-1075.) We note that Alonzo dismissed several defendants with prejudice before the defense motion. Contrary to Alonzo's view, this fact does not excuse his failure to include a proper statement of appealability in his brief. (Cal. Rules of Court, rule 8.204(a)(2)(B); see *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 557.) However, we decline to strike his brief based on this or the other defects we describe, *post*.

5

"In reviewing a defense summary judgment, we apply the traditional three-step analysis used by the trial court, that is, we (1) identify the pleaded issues, (2) determine if the defense has negated an element of the plaintiff's case or established a complete defense, and if and only if so, (3) determine if the plaintiff has raised a triable issue of fact." (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175.)

A defendant need only provide evidence showing that the plaintiff cannot prove his or her case. (See *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 853-855.)

In support of his arguments on appeal, Alonzo freely cites purported facts tendered with his denied reconsideration motion, and facts tendered in opposition to summary judgment that were the subject of successful objections. But he fails to challenge the trial court's evidentiary rulings.

The only headed claim challenging the trial court's evidentiary rulings cites Rules of Court pertaining to formatting objections. Nowhere does Alonzo contend a trial court lacks authority to excuse noncompliance with such rules. Further an appellant must show a *miscarriage of justice,* not merely a procedural error. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; see *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, 884; see also *Herrera v. Deutsche Bank National Trust Co*. (2011) 196 Cal.App.4th 1366, 1378 [trial court's evidentiary rulings were based on the merits, not formatting, therefore formatting claims were "of no moment" on appeal].) Alonzo provides no authority showing any evidentiary rulings were substantively wrong. Thus, we decline to consider evidence that was excluded from consideration by the trial court. (See *In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672-673, fn. 3 [failure to cite authority forfeits claim].) Elsewhere, Alonzo complains of evidentiary matters in footnotes or without heading the complaints. These complaints, too, are forfeited. (See *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830-1831, fn. 4 [failure to head and argue claim forfeits the claim].)

6

The pleadings outline the perimeter of materiality in summary judgment proceedings. (See *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381-382 (*FPI*).) Opposition evidence or new legal theories do not expand the pleadings. (See *Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 290 ["Declarations in opposition to a motion for summary judgment are not a substitute for amending the pleadings to raise additional theories"]; *Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663 (*Bostrom*) ["summary judgment cannot be *denied* on a ground not raised by the pleadings"]; *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 176 ["It would be patently unfair to allow plaintiffs to defeat [a defense] summary judgment motion by allowing them to present a 'moving target' unbounded by the pleadings"].) The pleadings are not a "ticket to the courtroom which may be discarded after admission." (*FPI*, *supra*, at p. 381.)

II

*Failure to Return Telephone Calls*

In several parts of his briefing, Alonzo contends there is a triable issue as to whether CARES was negligent in not returning his telephone calls of August 27, when he was within the PEP treatment window, positing that if those calls had been returned promptly, he would have received effective PEP treatment.[4]

To the extent Alonzo asserts there is a "hotly contested" issue as to whether he presented himself at CARES within the PEP window, he is mistaken. Although he argues--and we agree--that the trial court's ruling incorrectly quotes part of Alonzo's declaration (to the effect that he had no idea when he last had sex with his partner) to

---

[4] We reorder and combine some of the arguments tendered by Alonzo. Our conclusions will obviate the need to discuss at any length some issues separately headed by Alonzo and discussed by the parties, including whether or not CARES owed any duty of any kind to Alonzo, an issue briefed by the parties but unnecessary to decide in this case.

which the trial court sustained an objection, this point is of little significance. First, we deem this error by the trial court to be invited because Alonzo tendered the evidence--his own declaration--that he now complains the trial court relied on. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 390(1)(a), p. 448.) Second, the error was immaterial, because Alonzo's deposition testimony was first that he had sex *outside* the 72 hour window, and next--at best for Alonzo--*that he did not know what time it was* except that it was very early morning, and he had been guessing when he testified to a time outside the window. Either way, Alonzo cannot show by a preponderance of the evidence that he was *within* the PEP treatment window, his burden at trial. (See Evid. Code, §§ 115, 500, 521.) Therefore CARES showed via Alonzo's own evidence that he lacked the ability to prove this point.

Alonzo's remaining claim on appeal about the PEP window is that CARES should have returned his call promptly and arranged for his care the day before, August 27, 2009.

No such claim is pleaded in the complaint. Nor was it set forth in Alonzo's discovery responses, where Alonzo, represented by counsel, listed several theories of liability, including that PEP treatment should have been provided on August *28*, 2009, but did not list that as a theory pertaining to August *27*, 2009.[5]

---

[5] The question was "Explain in detail what action [CARES] should have taken which would have prevented you from contracting HIV. In answering this interrogatory, include the date where [CARES] should have taken action." Alonzo replied: "On August 27, 2009 CARES should have contacted Mr. Alonzo to inform him that he needed to go get HIV tested based on the results that [his partner] was given by the non-certified HIV tester. On August 28, 2009 Amanda Chi should have provided Mr. Alonzo with a Western Blot, if in fact there were no Rapid Testing kits available. Amanda Chi should have allowed Mr. Alonzo to see a Doctor, or should have spoken to Dr. Troia regarding Mr. Alonzo's urgent request so that Dr. Troia could have ordered specific blood work and discuss Mr. Alonzo's options regarding PEP medication for those recently exposed to HIV. CARES administration should have handled Mr. Alonzo's entire complaint with

As CARES properly emphasizes on appeal, and as we explained *ante,* Alonzo cannot add a new theory in response to a summary judgment motion without amending his complaint. (See, e.g., *Bostrom*, *supra*, 35 Cal.App.4th at pp. 1663-1664.)

Accordingly, there is no "triable issue" about whether CARES failed to timely return Alonzo's telephone calls on August 27, 2009, because Alonzo did not plead that such failure caused his damages.[6]

Moreover, CARES's expert, having reviewed Alonzo's discovery responses and other materials, which included the claim that Alonzo's calls were not returned, opined that CARES did not act below the standard of care. " 'When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.' " (*Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 985 (*Munro*).) No such conflicting expert evidence was tendered herein, to demonstrate any duty to return calls. Although Alonzo claims "By attesting that PEP treatment can only be effective . . . within 72 hours, [the defense expert] essentially confirmed that it was the standard of care to give PEP as

---

urgency, respect and policy as recommended and suggested on both Federal and State levels. CARES should have paid more attention to their e-mails between Mr. Alonzo and them; too many contradictions; and so on. Please refer to the chronology of events in the hands of CARES Executive Director for more detailed answers to this question." Alonzo's briefing does not cite to the referenced "chronology of events" and we will not speculate about its contents.

[6] At oral argument in the *trial* court, Alonzo's counsel expressed regret that the complaint had not been amended, but no amended complaint was ever sought to be filed. A defense summary judgment motion is addressed to the complaint, which outlines the perimeter of materiality. (See *FPI, supra*, 231 Cal.App.3d at p. 381.) To the extent that appellate counsel suggested in oral argument in this court that a motion to amend the complaint was made in the trial court, the record does not support that assertion.

9

soon as possible after exposure within a 72 hour time period," this assertion does not show a duty of a non-profit clinic to return telephone calls within a certain timeframe.

III

*Failure to Warn*

Alonzo contends there is a triable issue as to whether CARES should have warned him that his partner was HIV-positive.  We disagree.

Any person who discloses HIV test results of an identifiable patient, with exceptions such as disclosures to public health authorities and where the patient has given consent for disclosure to a sexual partner, may be criminally and civilly liable.  (See Health & Saf. Code, §§ 120980, subds. (a), (b), & (c), 121015, 121022; see 2 Witkin, Cal. Evidence (5th ed. 2012) Witnesses, §§ 542-547, pp. 942-947.)  Thus, CARES had a statutory duty to Alonzo's partner *not* to reveal his HIV status to Alonzo.

Alonzo claims there are triable issues of fact about whether CARES should have advised him and his partner about a "partner notification program" or should have told him he had been exposed to HIV, without mentioning his partner's name.

The only evidence describing a partner notification program was a part of Alonzo's declaration as to which an objection was sustained.  Further, Alonzo did not plead that CARES breached a duty to advise him about or enroll him in a "partner notification program," nor was that theory outlined in his discovery response.  CARES had no need to refute this or any other unpleaded theory in its motion.

As for anonymous disclosure, the only expert evidence was from the CARES expert, who opined it would breach the duty of care to disclose that Alonzo had been exposed to HIV.  As CARES observes, it then became incumbent on Alonzo to produce *contrary* expert evidence showing that a breach occurred regarding a duty to warn.  (See *Munro*, *supra*, 215 Cal.App.3d at p. 985.)  He did not do so.  Further, CARES points out that an anonymous warning would not have been anonymous.  Alonzo testified he and his partner were monogamous.  He claims CARES knew he was in a relationship with that

10

partner.  Thus, if CARES told Alonzo he had recently been exposed to HIV, CARES necessarily would have disclosed Alonzo's partner's identity, in violation of its statutory duties.

Alonzo points to *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 (*Tarasoff*), for the proposition that CARES had a duty to warn him of a specific foreseeable threat of infection from his partner.  *Tarasoff* found a common-law duty on the part of mental health therapists who learned or should have learned that a patient posed a "serious danger of violence" toward a specific third party, either by warning that third party or taking other reasonably necessary steps.  (*Id.* at pp. 430-431, 435-439.) *Tarasoff* was a common-law tort ruling.  Here, there is a statutory restriction precluding CARES from revealing to Alonzo that his partner was HIV-positive.  Thus, even if Alonzo's *Tarasoff* theory were otherwise correct, which we do not hold, "It must also be borne in mind that 'our codes, of course, were intended as complete revisions of the existing laws upon the subjects embraced therein' [citation], and that their provisions establish the law of this state respecting the subjects to which they relate.  [Citations.]  It is only when the code and other statutes are silent that the common law governs." (*Burlingame v. Traeger* (1929) 101 Cal.App. 365, 371; see, e.g., *Strang v. Cabrol* (1984) 37 Cal.3d 720, 721-728 [adopting an opinion of this court, regarding legislative abrogation of a common-law tort ruling].)  The statutes restricting release of HIV information would trump any common-law duty that otherwise would apply.

IV

*Unequal Treatment*

Alonzo contends CARES did not negate his claim of unequal treatment in violation of the Unruh Civil Rights Act.  He argues he was treated differently because of "his race, sexual orientation, medical condition and physical disability."  This claim exceeds the allegations of his complaint.

11

The trial court granted summary adjudication on the civil rights count in part because Alonzo did not plead that he was discriminated against based on race or sexual orientation. This ruling was correct.

The complaint alleges that Alonzo was entitled to services "regardless of plaintiff's sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status or sexual orientation." This is a legal proposition that is not disputed. (See Civ. Code, § 51, subd. (b) ["All persons . . . are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal . . . services in all business establishments of every kind"].)

Factually, Alonzo alleged CARES "wrongfully refused appropriate and necessary medical treatment to plaintiff *because of his medical condition*, *based upon defendants' knowledge that plaintiff had previously tested HIV negative*, notwithstanding that he recently had been exposed to HIV and met the regulatory criteria for treatment." (Italics added.) Alonzo did not plead that his right to services on an equal footing--regardless of race, sexual orientation, or physical disability--was violated, as he asserts on appeal.

Further, the passages of Alonzo's declaration that survived defense objections do not show any disparate treatment. The paragraphs in his declaration alleging CARES wrongly assumed Alonzo was a promiscuous substance-abusing Latino homosexual who had probably already been exposed to HIV, were presumptively disregarded by the trial court, which sustained objections thereto.[7]

This leaves Alonzo's claim that he was treated differently because of his medical condition. The trial court reasoned that the perceived *lack* of a medical condition--here, HIV infection--was not a covered status. We agree. A "medical condition" within the

_____

[7] Alonzo also testified in deposition that CARES treated him differently because he was viewed as a "homosexual," "a whore," "a drug addict," and "a drunk."

12

meaning of the Unruh Civil Rights Act "has the same meaning as defined in subdivision (h) [*sic*] of Section 12926 of the Government Code." (Civ. Code, § 51, subd. (e)(3).) The referenced section, in turn, provides that "medical condition" means a "health impairment" related to cancer, or alternatively, a genetic characteristic. (Gov. Code, § 12926, subd. (i).)[8] The fact a person was HIV-negative does not qualify as a "medical condition" under the Unruh Civil Rights Act.

Alonzo also contends he raised a triable issue because a CARES employee assured him he had tested negative before and did not take his claim that he had recently been exposed seriously. However, the record citation supplied by Alonzo is to a portion of his declaration that was stricken by the trial court. As we have described *ante*, Alonzo does not effectively challenge this (or any) evidentiary ruling on appeal. Thus we must disregard this evidence.

V

*Deposing the Expert Witness*

For the first time in his reply brief, Alonzo claims he should have been allowed to depose the defense expert before the trial court ruled on the summary judgment motion. This belated claim is forfeited. (See *Utz v. Aureguy* (1952) 109 Cal.App.2d 803, 808 [new claim raised in reply brief generally deemed forfeited].)

---

[8] Due to amendments, the statutory cross-reference is now to an incorrect subdivision. This kind of legislative drafting error is of no moment. (See *In re Thierry S*. (1977) 19 Cal.3d 727, 741, fn. 13; *People v. Bradford* (1905) 1 Cal.App. 41, 42-43.)

13

## DISPOSITION

The judgment is affirmed.  Alonzo shall pay CARES's costs on appeal.  (See Cal. Rules of Court, rule 8.278.)

_____/s/_____

Duarte, J.

We concur:

_____/s/_____

Raye, P. J.

_____/s/_____

Mauro, J.