Filed 4/28/16  Boulos v. Boulos CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROSHDI BOULOS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MARIA REGINA BOULOS,<br><br>    Defendant and Respondent;<br><br>HAROLD FITZGERALD LENFEST,<br><br>    Intervener and Respondent. | B261112<br><br>(Los Angeles County<br>Super. Ct. No. YC068882) |

APPEAL from a judgment of the Superior Court of Los Angeles, Ramona G. See, Judge.  Affirmed.

Cabanday Law Group, Orlando F. Cabanday for Plaintiff and Appellant.

Payne & Fears, Thomas L. Vincent, Scott O. Luskin for Defendant and Respondent Maria Regina Boulos, and Intervener and Respondent Harold FitzGerald Lenfest.

_____

## SUMMARY

Appellant Roshdi Boulos (Roshdi) filed the action below against his former daughter-in-law, Maria Regina Boulos (Regina) to enforce an April 2011 letter agreement in which Regina granted Roshdi a second mortgage security interest in her Manhattan Beach house.[1] Harold FitzGerald Lenfest (Lenfest), a longtime creditor to Regina and Magdi Boulos (Mike)—Regina's ex-husband and Roshdi's son—and their companies, intervened in the action. After a bench trial, the trial court found the April 2011 letter agreement to be a "sham" transaction to avoid creditors and awarded proceeds from the sale of the Manhattan Beach house to Lenfest. Roshdi appeals. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mike, an Australian businessman, formed TARBS World TV in Australia in 1998, and Regina, who was married to Mike at the time, served as its Chief Executive Officer. Lenfest provided TARBS approximately $25 million in financing. TARBS, however, went into receivership and in 2004, Mike restructured the business into a new entity, United Broadcasting International (UBI) and obtained an additional $3.6 million loan from Lenfest to UBI. Regina served as UBI's President, and Mike as UBI's Chairman. Under the 2004 loan between Lenfest and UBI, Mike and Regina as guarantors, agreed inter alia that while any amount was owed under the loan, they would not encumber any of their assets without Lenfest's written consent. Under the terms of the Lenfest-UBI loan, it was to be repaid in full by its August 1, 2010 termination date. It was undisputed that the Lenfest-UBI loan remained unpaid at the time of trial.

In July 2010, a few weeks before the Lenfest-UBI loan's termination date, Mike arranged (without notice to Lenfest) for a $2.5 million loan to Boulos Holdings, another of his companies, from Australian Executors Trustees (AET), with the intention that Boulos Holdings would in turn make the funds available to UBI. As security for the AET-Boulos Holding loan, Roshdi allowed his unencumbered home in Australia (Uralla

---

[1] Because many parties share the same last name, to avoid confusion we use their first names. We mean no disrespect.

2

Road Property) to be used as collateral. At the same time, Mike arranged to treat the AET loan as a loan between Boulos Holdings and Roshdi and agreed to give Roshdi a $2.5 million second mortgage on a property in Australia known as the Flour Mill.[2]

The Lenfest-UBI loan was in default starting August 1, 2010, and Mike and Regina, as guarantors owed Lenfest over $29 million.[3]

On April 8, 2011, nine months after the July 2010 AET-Boulos Holding loan secured by Roshdi's Uralla Road Property, Regina signed the letter agreement which is the basis for the instant litigation. In the April 8, 2011 Letter Agreement drafted by Mike, Regina stated that Roshdi had agreed to mortgage his Uralla Road Property "as support for a loan to Boulos Holdings Pty Limited for the amount of $2,500,00 to be used as working capital for [UBI] for a period of two year [*sic*] unless otherwise extended. [¶] It's agreed that [UBI] will bear all interest Payments on the loan together with any borrowing costs. [¶] We acknowledge recept [*sic*] of the loan funds on 20 July 2010. [¶] I[,] Maria Regina Boulos will now Grant you a registered second mortgage security over my property in the United States at 930 John Street[,] Manhattan Beach[,] California until such time as the loan is extinguished. [¶] The amount to be secured by the 2nd mortgage will be for Aus$2,500,000." Neither Roshdi nor Mike took any action to record Roshdi's interest in the Manhattan Beach Property until the end of May 2012, after UBI's failure.

In May 2012, UBI was placed in receivership and the National Australian Bank froze UBI's accounts and a week later froze Mike and Regina's assets. UBI was liquidated and Lenfest received $380,000. Boulos Holding was also placed into receivership in June 2012.

In July 2012, Lenfest filed an Australian action against Mike and Regina to enforce the personal guarantees in the Lenfest-UBI loan and, in September 2012,

---

[2] Mike believed Flour Mill had a value in excess of $10 million and debt of approximately $5.8 million.

[3] Lenfest did not give notice of the default as calling the loan would have put UBI out of business.

3

obtained consent orders and then judgments in favor of Lenfest in the amounts of A$7,010,488.47 and US$47,215,502.23.

In October 2012, Lenfest sued Regina and Mike in Los Angeles Superior Court to domesticate the judgments. In that matter, the court issued a right to attach order for the Manhattan Beach property in January 2013. On May 1, 2013, the court entered a judgment against Regina and Mike, domesticating the Australian judgment in the amounts listed and an abstract of the judgment was recorded in Los Angeles County on June 6, 2013.

Meanwhile, on March 26, 2013, Roshdi filed a complaint in the instant action, seeking specific performance on the April 8, 2011 Letter Agreement, declaratory relief declaring his right to a $2.5 million (Australian) security interest in the John Street Property, and judicial foreclosure on the John Street Property.

In her answer, Regina made a general denial and raised a number of affirmative defenses, including that Roshdi was "precluded from recovery due to failure of consideration."

In November 2013, Lenfest moved to intervene in the instant action. After a five-day bench trial and briefing by parties in lieu of closing arguments, the trial court issued a Statement of Decision on October 31, 2014. The trial court found "that Mike Boulos, who drafted Trial Exhibit No. 2, and Regina Boulos, who signed [the April 8, 2011] letter agreement, knew that Regina Boulos and Mike Boulos owed millions of dollars to Mr. Lenfest and by entering into such an agreement they were breaching their agreement with Mr. Lenfest." The trial court noted that "the entire Boulos family in Australia was counting on Mike Boulos to financially provide for and take care of them and for many years he did just that. Once the Boulos financial empire was crumbling, however, Mike Boulos and Regina Boulos tried everything to save what they could from their creditors. The Court finds they engaged in business and financial schemes which ultimately became a 'robbing Peter to pay Paul' situation until their financial house of cards came tumbling down around them with the economic downturn."

4

The court found that both Regina and Mike aware that their financial situation was precarious: "The Court finds that Regina Boulos only came to Mr. Lenfest, not because of a sudden act of consciousness, but only when she saw the writing on the wall: this financial house of cards was coming down, her life of luxury was over and she needed to bail herself out of the sinking ship before all was lost . . . Similarly, Mike Boulos tried everything to save any assets he could, including encumbering his father's home, drafting and getting Regina Boulos to sign the April 8, 2011 letter agreement (Trial Exhibit No. 2), and then attempting to transfer the John Street Property to his father who was not a party to nor a signatory on any of the numerous loans and financial obligations whose creditors were then knocking on the door for payment." The court then concluded, "Based upon these findings, the Court finds that April 8, 2011 letter agreement (Trial Exhibit 2) was a sham transaction to avoid Mike Boulos' and Regina Boulos' creditors. *See Saks v. Charity Mission Baptist Church* (2011) 90 Cal.App.4th 1116, 1134. Further and despite a failure to allege a specific affirmative defense of Fraudulent Transfer, Lenfest and Regina Boulos both allege that the April 8, 2011 letter agreement was a sham transaction. The Court finds that these allegations put Plaintiff on notice of this defense/claim and the Court finds that it is a valid affirmative defense/claim in this action. As such, the Court finds the April 8, 2011 letter agreement was also a fraudulent conveyance to Roshdi Boulos. *See Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 649. Therefore, based upon the aforementioned analysis and findings, this Court voids the April 8, 2011 Letter Agreement (Trial Exhibit No. 2), expunges the lis pendens on the John Street Property, and the Court awards any remaining proceeds from the sale of the John Street Property including any interest accrued thereon to Mr. Lenfest."

Roshdi filed objections to the Statement of Decision which the trial court overruled. Specifically, the court stated that it found that Regina signed the April 8, 2011 letter agreement on that date but that "the letter constituted a sham and was void." The court also stated that it had specifically found that there was "inadequate consideration" for the April 8, 2011 Letter Agreement and "thus, that this was a sham transaction." Further, in response to Roshdi's objection that the trial court did not rule on Lenfest's

5

motion to conform the judgment to proof, the court also noted that its decision explained "why Lenfest was entitled to conform to proof and essentially granted the motion" and the court "made specific findings that there was inadequate consideration and thus, that [the subject mortgage in the April 8, 2011 letter agreement] was a sham transaction." The court stated that "Mike and Regina prepared the letter knowingly in breach of the loan agreement and that the agreement was a scheme to transfer the property to [Roshdi] who was not a party to the loans" and the elements of fraudulent conveyance were found.

Judgment was entered on December 16, 2014, and Roshdi timely appealed.

## DISCUSSION

On appeal, Roshdi contends that the trial court erred in finding the letter agreement to be a sham because the case relied upon by the trial court was distinguishable. Roshdi also argues that the trial court's judgment based on a fraudulent conveyance theory was in error because it was an abuse of discretion to allow Lenfest to amend his complaint to proof and the theory was not supported by substantial evidence. Moreover, Roshdi contends that the trial court erred by applying the doctrine of unclean hands based on Regina and Mike's bad acts to preclude Roshdi from recovering. Because we find no error in the trial court's determination that the April 8, 2011 letter agreement was a sham transaction, we affirm.

The trial court found the April 8, 2011 letter agreement "was a sham transaction to avoid Mike Boulos' and Regina Boulos' creditors," citing *Saks v. Charity Mission Baptist Church* (2011) 90 Cal.App.4th 1116, 1134 (*Saks*). On appeal, Roshdi argues that *Saks* is factual distinguishable and its holding "has no application here." Roshdi also argues that the trial court in a prior ruling had "concluded Roshdi exchanged consideration to Regina Boulos for her promises under the Letter Agreement" and in essence argues that the letter was not a sham transaction.

The court in *Saks* explained that a contract may "be subject to the defense that it was intended to be 'void, i.e., a sham not intended between [the parties] as a jural act.'" (*Saks*, *supra*, 90 Cal.App.4th at p. 1134, citing *FPI Development Inc. v. Nakashima*,

6

(1991) 231 Cal.App.3d 367, 402 ["Fraud in the inducement is a claim that one has been improperly induced into a jural act. Sham transaction is a claim that there was no jural act at all"]; *P. A. Smith Co. v. Muller* (1927) 201 Cal. 219, 222 ["It is well settled by the decisions in many jurisdictions that evidence that parties never intended a writing to constitute a contract, . . . is not objectionable under the parol evidence rule . . . [and] does not change a written contract by parol, but serves to establish that such contract had no force, efficacy, or effect"].) "A sham contract is a pretense undertaken for the purpose of deceiving a third party." (*FPI Development Inc.*, *supra*, 231 Cal.App.3d at p. 401, fn. 18; *Saks*, *supra*, 90 Cal.App.4th at p. 1134 ["the notes were a sham, put together in order to fool the City, intended to have no legal impact as between the parties"].)

The trial court concluded that the April 8, 2011 letter was a sham, i.e., intended to have no legal impact as between the parties. In contending that the facts here differ from those in *Saks*, *supra*, 90 Cal.App.4th 1116, Roshdi in effect argues that the court's conclusion that the transaction was a sham was not supported by substantial evidence. In reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the respondent and accept as true all the evidence and reasonable inferences that support the trial court's decision, and resolve every conflict in favor of the judgment. (*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.* (2007) 148 Cal.App.4th 937, 951.) ""'It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, in support of the judgment.'"" (*Id.* at p. 951.) The trial court here specifically found that the April 8, 2011 letter agreement was not supported by adequate consideration, and "thus, that this was a sham transaction." Likewise the court found that Mike and Regina were aware of their precarious financial situation and that the April 8, 2011 letter agreement was part of his attempt to "save any assets" by moving them to someone "who was not a party to nor a signatory of any of the numerous loans and financial obligations whose creditors were knocking on the door for payment. The court noted that when Roshdi allowed his house to be used as collateral in the AET-Boulos

7

Holdings loan, "[a]dditional loans, promises and security were provided to help secure [Roshdi's] home." Although Roshdi claims that his forbearance in calling in the loan from Boulos Holding to UBI of the funds received from AET served as consideration, the April 8, 2011 loan does not mention the forbearance and instead states that Roshdi allowed the Uralla Road Property to be used to "support a loan to Boulos Holdings" and the loan funds were received on July 20, 2010.[4] Thus, there was substantial evidence to support the court's conclusion that no adequate consideration was provided in exchange for the April 8, 2011 letter agreement.

Similarly, Roshdi contends that he believed the agreement to have legal effect and had given consideration by forbearing on the Boulos Holding-UBI loan, in effect arguing that there was conflicting evidence in his favor. To the extent appellant challenges the trial court's credibility determinations or the weight of the evidence as, for example, when there was conflicting testimony, we neither reweigh the evidence nor reassess credibility determinations, as "'[t]he Court of Appeal is not a second trier of fact. . . .'" (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531; *Estate of Young* (2008) 160 Cal.App.4th 62, 76.)

Roshdi also argues that the trial court ignored its ruling earlier in the proceeding when it concluded that Roshdi's forbearance served as consideration for the April 8, 2011 letter. Specifically, in December 2013, the trial court denied Regina's motion to expunge the lis pendens on the Manhattan Beach property, noting that "forbearance may constitute sufficient consideration" and under Civil Code section 1614 a "written instrument itself is presumptive of consideration." While the court may have found that Roshdi "established by a preponderance of the evidence the probable validity of the real property claim" under the standard to withstand a motion to expunge a lis pendens (Code Civ. Proc., §

---

[4] It is unclear from the record the basis for Roshdi's suggestion that he would have had the authority to call in the loan from Boulos Holding to UBI as he was not involved in the operations of the companies. In any event, there was testimony from Mike conceding that if he called in the Boulos Holding loan to UBI of the AET funds, it would have led to UBI's failure and liquidation.

405.32), such a determination does not preclude a finding after trial based on the evidence that consideration was inadequate.

On appeal, an order of the superior court is presumed to be correct.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  "'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.  This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'"  (*Ibid.*)  Roshdi has failed to meet his burden on appeal to show that the trial court erred in concluding that the April 8, 2011 letter agreement was a sham transaction.  Accordingly, we need not address Roshdi's remaining contentions.  We affirm.

## DISPOSITION

We affirm.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


LUI, J.

9